Marvin Ray GRIFFIN

v.

PIEDMONT AVIATION, INC.

Civ. A. No. 19550.

United States District Court,
N. D. Georgia,
Atlanta Division.

Nov. 7, 1974.

Robert J. Martin, Jr., of Adair, Goldthwaite, Stanford & Daniel, Atlanta, Ga., for plaintiff.

R. Lawrence Ashe, Jr., of Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, Chief Judge.

██ The plaintiff in this action is an ex-employee of the defendant. He alleges that he was discharged in retaliation for his union organizing activity and that his discharge was a violation of the Air Carriers Labor Act (ACLA), 45 U.S.C. § 181 et seq. The plaintiff seeks back pay and reinstatement and contends that jurisdiction to hear his suit and grant the relief sought is derived from the ACLA coupled with either general federal question jurisdiction, 28 U.S.C. § 1331, or § 1337, which confers jurisdiction over all actions "arising under any Act of Congress regulating commerce". The defendant contends that the ACLA creates no private right of action and that plaintiff's only remedy is to be found in state court. Plaintiff, however, expressly disclaims reliance on any state law breach of contract theory,[1] and strenuously contends the ACLA should be held to create a private right of action for a litigant in his precise situation. The question of whether or not this court has jurisdiction over this action is squarely presented. There is little doubt that plaintiff's cause of action, if any, arises under an act of Congress regulating commerce. The actual questions presented are (1) is plaintiff's claim one that is within the exclusive jurisdiction of one of the airline adjustment boards, and (2) if it is not, is plaintiff without a federal remedy or does the ACLA create a private right of action?

On October 21, 1974, the court held a hearing on the jurisdictional issue. At that hearing the defendant conceded that the plaintiff could not obtain the relief he seeks from any adjustment board as there is no adjustment board with jurisdiction to hear grievances presented by ramp agents employed by Piedmont. There can be no doubt that the plaintiff has alleged that he was discharged in violation of the Air Carriers Labor Act. The crucial question is, therefore, whether the plaintiff should be left without any federal remedy for a violation of his federally created rights under the Act. This court is convinced he should not. The question, however, is a novel one which has apparently never been asked in this circuit.

The Fifth Circuit case which comes closest to facing this issue is Brotherhood of Railroad Trainmen v. Central of Georgia Ry., 305 F.2d 605 (5th Cir. 1962). In that case the employee in question was covered by a collective bargaining agreement. The employee had taken a leave of absence to work full time for his union. The railroad attempted to bring him before a disciplinary hearing on charges that his union activity constituted "gross disloyalty" to the carrier. The employee and the union brought suit alleging that (1) the disciplinary hearing was illegal (because an employee on a leave of absence was not subject to punishment for the offense charged), and (2) the disciplinary hearing was part of a plot to "hamper, impede and hinder" the union's activity and this plot violated the Railway Labor Act. The district court dismissed the suit for failure to state a claim. The Fifth Circuit, in reversing in part, held that the first claim must be presented to

---

1. This disclaimer incidentally resolves another issue in this action. Plaintiff had originally alleged that this court had diversity jurisdiction over his suit. 28 U.S.C. § 1332. It is clear that no diversity jurisdiction exists in the absence of any claim which could be enforced in the state courts. Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); Textile Banking Co. v. Colonial Chemical Corp., 285 F.Supp. 824, 826 (N.D.Ga.1967). Thus as the plaintiff disclaims any intention to assert a right grounded in state law, there is no diversity jurisdiction and the court need not become entangled in the parties' dispute over whether the requisite jurisdictional amount is present.

the Railway Adjustment Board *because it arose under the existing collective bargaining agreement,* but that the federal courts would hear the claim that the company was attempting to defeat the intent of the Act. As the court based its refusal to entertain the employee's personal claim on the existence of the agreement rather than upon the existence of the Act, it appears that the jurisdictional question presented by this suit remains an open one in this circuit.

There is only one case which is directly on point. In Burke v. Compania Mexicana de Aviacion, 433 F.2d. 1031 (9th Cir. 1970), the court was presented with a situation virtually identical to the present case. Burke, a salesman for Mexicana Airlines, attempted to organize his fellow workers into a bargaining unit and was subsequently fired. He brought suit seeking back pay and reinstatement. The airline, as does the defendant here, argued that the Act did not create a private right of action. The district court dismissed the suit for failure to state a claim upon which relief could be granted. On appeal, the circuit reversed, holding in pertinent part:

> "To hold, in this case, that Burke may not bring suit for a violation of section 2 (Fourth) would leave a gap in the enforcement of that section which would blunt the effectiveness of the congressional purpose. So long as a carrier's interference with its employees' right to freely organize were swift and forceful enough to prevent organization of a union altogether or to coerce employees into joining a company dominated union, the carrier would have acted with impunity. There would be no union, or at least none willing, to press the employees' claim. In Burke's case this is precisely what happened. He was discharged before he was able to extend union coverage to his unit. Thus he is not a member of the union, and the union has no duty or desire to represent him. If Burke cannot sue to enforce the Act, no one can. Such a result is inconsistent with Congress' concern that section 2 (Fourth) be backed by adequate penalties and could not have been intended.

> "Nor is Burke's remedy limited to institution of criminal proceedings under section 2 (Tenth). In the absence of a clear congressional intent to the contrary, the courts are free to fashion appropriate civil remedies based on the violation of a penal statute where necessary to ensure the full effectiveness of the congressional purpose. Where the interest asserted by the plaintiff is within the class that the statute was intended to protect, the harm of the type the statute was intended to forestall and the statutory criminal penalty inadequate to fully protect the asserted interest, a civil action for damages arises by implication. * * *

> "The imposition of criminal penalties upon the employer is inadequate to protect the organizational rights of the discharged employee. Such penalties would neither restore Burke to the position where he could again exercise those rights nor recompense him for the pecuniary loss suffered as a result of their violation. The only remedies adequate fully to effectuate the congressional purpose in this case are those requested by Burke—damages and reinstatement." [Citations omitted.]

This court is convinced that the reasoning in *Burke* is sound and that it reaches the correct result. The court finds that 28 U.S.C. § 1337 confers jurisdiction over this action on the federal courts, that this court has authority to grant the relief sought by the plaintiff, and that this suit can now proceed to a decision on the merits.