Margaret M. KENT

v.

Joseph M. FUGERE and Pilgrim Aviation and Airlines, Inc.

Civ. A. No. H-77-267.

United States District Court, D. Connecticut.

Oct. 19, 1977.

John C. Wirzbicki, (Conn. Legal Services) New London, Conn., for plaintiff.

Michael A. Rakosky, New London, Conn., Michael H. Campbell, Fisher & Phillips, Atlanta, Ga., for defendants.

### RULING ON MOTION TO DISMISS

CLARIE, Chief Judge.

Margaret M. Kent, a former employee of Pilgrim Airlines, brought this action alleging that she had been wrongfully discharged because of her (unsuccessful) efforts to encourage her fellow employees to seek collective bargaining representation by the International Brotherhood of Teamsters. The plaintiff seeks reinstatement, backpay, and other relief claiming that her discharge was in violation of her rights under the Railway Labor Act and her employment contract. The defendants contend that the Court lacks subject matter jurisdiction over this case because the plaintiff has failed to exhaust the mandatory labor dispute resolution procedures under the Railway Labor Act. The Court finds that the plaintiff has no available administrative remedies and that the assertion of subject matter jurisdiction in this case is proper. Therefore, the motion to dismiss is denied.

The history of the Act will help to clarify the respective positions of the parties. The Supreme Court teaches that:

> "Congress has long concerned itself with minimizing interruptions in the Nation's transportation services by strikes and labor disputes and has made succes-

sive attempts to establish effective machinery to resolve disputes . . . ." *International Association of Machinists v. Central Airlines, Inc.*, 372 U.S. 682, 687, 83 S.Ct. 956, 959, 10 L.Ed.2d 67 (1963). In 1920, Congress provided for the voluntary formation of boards of adjustment to deal with the minor disputes arising out of the interpretation and application of existing contracts. If the disputes remained unresolved after resort to these boards, they were to be referred to the Railway Labor Board. The fact that the decisions of the Labor Board were not legally enforceable led to highly unsatisfactory results, and in 1926 Congress decided to give binding effect to the decisions of the boards of adjustment. Despite this legislative change these boards of adjustment still proved ineffective in many instances. They were composed of an equal number of employee and employer representatives, and since the Act did not provide for any means of breaking the frequent deadlocks, minor disputes often went unresolved. As a result, in 1934 the Act was amended to create the National Railroad Adjustment Board with the power to make final awards, with the help of neutral referees appointed by the National Mediation Board, when that procedure was found necessary. 45 U.S.C. § 153.

In 1936, Congress extended the Railway Labor Act to cover the air transportation industry. 45 U.S.C. §§ 181–188. The purpose of this action "was to extend to air carriers and their employees the same benefits and obligations available and applicable in the railroad industry." *Machinists, supra*, 372 U.S. at 685, 83 S.Ct. at 958. Significantly, however, all of the provisions of the Railway Labor Act were made applicable to the airlines, except 45 U.S.C. § 153, which dealt with the National Railroad Adjustment Board. In the place of § 153, Congress enacted 45 U.S.C. §§ 184–185, to provide for the resolution of minor disputes in the airline industry.

Section 185 provided for a National Air Transport Board, which would be equivalent to the National Railroad Adjustment Board. The Air Transport Board was not to be created until "in the judgment of the National Mediation Board, it shall be necessary to have a permanent national board of adjustment . . . ." To date, the NMB has never exercised its power to establish the National Air Transport Board. But this fact does not leave the airline industry without a grievance procedure for minor disputes arising out of the collective bargaining agreement. Rather, in the absence of the national board,

"[T]he parties were placed under the statutory duty of establishing and utilizing system, group, or regional boards of adjustment for the purpose of adjusting and deciding disputes arising under existing contracts." *Machinists, supra*, 372 U.S. at 686, 83 S.Ct. at 959.

Thus, 45 U.S.C. § 184 states that until a national board for the airline industry is established:

"It shall be the duty of every carrier and of its employees, acting through their representatives, selected in accordance with the provisions of 181 to 188 of this title, to establish a board of adjustment of jurisdiction not exceeding the jurisdiction which may be lawfully exercised by system, group, or regional boards of adjustment, under the authority of section 153 of this title.

However, the adjustment boards provided for in § 184 do not represent the exclusive means of resolving disputes in the airline industry. The National Mediation Board also plays a substantial role. However, these distinct boards have differing authority and jurisdiction. The National Mediation Board has jurisdiction over major labor disputes. Its function is to use the processes of mediation and negotiation to prevent strikes. Unlike the adjustment boards, the NMB cannot make awards resolving individual grievances, after finding one party at fault. As the Supreme Court has noted:

"Throughout the hearings on the bill which became the 1926 Act there are

repeated expressions of concern that the National Mediation Board should retain no adjudicatory function, so that it might maintain the confidence of both parties." *Chicago & N. W. R. Co. v. Transportation Union*, 402 U.S. 570, 580, 91 S.Ct. 1731, 1737, 29 L.Ed.2d 187 (1971). (footnote omitted).

Donald Richberg, counsel for the organized railway employees supporting the bill, stated during Hearings on Railroad Labor Disputes (H.R. 7180) before the House Committee on Interstate and Foreign Commerce, 69th Cong., 1st Sess., 18 (1926):

"The board of mediation, to preserve its ability to mediate year after year between the parties, must not be given any duties to make public reports condemning one party or the other, even though the board may think one party is wrong. That is the fundamental cause of failure of the [Railroad] Labor Board. That is the reason why the Labor Board machinery never would work, because the board was constituted to sit and deliver opinions which must be opinions for or against one party, and as soon as that board began delivering opinions publicly against a party, that party was sure the board was unfair to it. That is human nature. The board, in other words, was created in a manner to destroy any confidence in itself.

"The board of mediators is not for that function. The board of mediators should never make any reports to the public condemning one party or the other. Their duty is that of remaining persuaders."

■ The defendants contend that plaintiff has failed to exhaust the mandatory dispute resolution procedures of the Railway Labor Act. It is clear, however, that the NMB is not the appropriate forum to hear the plaintiff's claims. Certainly, a request for reinstatement and backpay, such as that of the plaintiff in the instant case, is not the type of major dispute which the Act leaves "for settlement entirely to the processes of noncompulsory adjustment." *Elgin, J. & E. R. Co. v. Burley*, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). This fact was confirmed by the NMB itself in response to a complaint filed with that board by the plaintiff. Thus, Rowland Quinn, Executive Secretary of the NMB, wrote to the plaintiff's counsel prior to the filing of this action, saying:

"Please be advised that the National Mediation Board has no jurisdiction to determine the question of whether Margaret Kent was discharged for union activities. Such jurisdiction under the circumstances of this case lies exclusively in the Courts.

"There are no administrative remedies for · Ms. Kent to exhaust in this case. Thus, her suit in Federal District Court was jurisdictionally proper and if she wishes to pursue the matter, she should reinstate the suit."

■ The defendants argue that the plaintiff has failed to exhaust the remedies provided by the boards of adjustment. However, under the circumstances of this case there is no available board to deal with this dispute. This case involves a grievance arising in the airline industry; therefore, the plaintiff cannot bring her claim to the National Railroad Adjustment Board. Nor can she resort to the National Air Transport Board which has yet to be created. Furthermore, the employer and employees have not established any local boards of adjustment to which the plaintiff can now turn.

In *Associated Pilots of Alaska v. Alaska International Air, Inc.,* No. A76–122 (D.Alaska, Sept. 9, 1976), the court dealt with this precise issue in determining that the assertion of jurisdiction over the subject matter of the case was proper. Judge Fitzgerald there stated:

"The individual petitioner's claims of wrongful discharge are not minor disputes subject to the mandatory dispute settlement procedures incorporated in the Act. 45 U.S.Code, Section 184, provides

that disputes between carriers and employees arising from grievances or interpretations of the collective bargaining agreement are to be referred to boards of adjustment established by agreement of the air carriers and the employees selected personnel. It is clear that an adjustment board contemplated by an agreement of the carrier and the bargaining representative of the employees would have exclusive jurisdiction to resolve disputes over discharges under the collective bargaining agreement. Here the claim is that the discharge has violated the Act itself, not a nonexistent collective bargaining agreement. Moreover, there is no board of adjustment to hear this dispute. Therefore, if this action were dismissed, the discharged employees would have no immediate administrative remedy." *Alaska International Air, supra,* at 8.

The defendants cite *International Association of Machinists and Aerospace Workers v. Air Indies Corp.,* 86 LRRM 2076 (D.P.R. 1973), in support of their motion to dismiss. The court in *Air Indies* reached the exact opposite conclusion of the court in *Alaska International Air, supra,* on virtually the identical question presented in the instant case. However, this Court accepts the conclusion of the court in *Lum v. China Airlines Co.,* 413 F.Supp. 613 (D.Hawaii 1976), that the decision in *Air Indies* was "clearly erroneous." 413 F.Supp. at 616.

The mistake in *Air Indies* arises from the court's erroneous characterization of a suit claiming a wrongful discharge for union activities as a "representation dispute", which § 2, Ninth of the Railway Labor Act clearly places within the exclusive jurisdiction of the NMB. *Switchmen's Union v. National Mediation Board,* 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943). Thus, the court in *Air Indies,* in granting the defendant's motion to dismiss, stated:

"Since 1934, the year the National Mediation Board was established, when federal courts have been presented with *pro-*tests *involving representation disputes* under the Railway Labor Act, such actions have been uniformly dismissed on the ground that Congress has vested exclusive jurisdiction over such disputes in the National Mediation Board." 86 LRRM at 2077 (emphasis supplied).

The effect of this mis-characterization is clearly demonstrated by Judge Fitzgerald's discussion in *Alaska International Air* of what constitutes a representational dispute:

"If this were a representational dispute I believe the National Mediation Board would have exclusive jurisdiction, absent extraordinary circumstances calling for judicial intervention to enable the board to take jurisdiction to determine which representative is entitled to certification as the exclusive representative of the employees pursuant to the provisions of 45 U.S.Code, Section 152, sub-section Ninth. *Aircraft Mechanics Fraternal Association v. United Airlines,* 406 F.Supp. 492, Northern District of California, 1976.

"A representation dispute is defined by the applicable regulations in the Act itself as any 'dispute among a carrier's employees as to who are the representatives of such employees.' 29 CFR 1202.2, 45 U.S.Code, Section 152, sub-section Ninth. Here there is no dispute among the flight personnel as to who is their chosen representative. Instead, the dispute is between the employees and the carrier over the carrier's alleged interference with . . . the employees' choice of representative.

"Sub-section Nine of 45 U.S.Code, Section 152, provides an effective remedy for the resolution of representational disputes including the company-union situation and to compel a reluctant employer to bargain exclusively with the employees' duly selected representative. However, 45 U.S.Code, Section 152 sub-section Ninth, provides no remedy for other violations, such as the unlawful discharges such as herein alleged of 45 U.S.Code, Section 152, sub-sections Third and

Fourth." *Alaska International Air, supra*, at 10–11.

Similarly, the controversy in the instant case does not involve a representation dispute, and therefore the reasoning of the Court in *Air Indies* is inapposite.

■ At oral argument, the defendants raised the argument that the plaintiff had an obligation under 45 U.S.C. § 184 to form a system board of adjustment to deal with this individual case. However, the statute imposes the duty to create a board of adjustment on the employees only when they have selected a representative. Consequently, no duty exists in this case because that group of Pilgrim Airlines employees has failed to obtain representation. The defendants insist that plaintiff's attorney is her "representative" for purposes of the Act, and that he has the power and the duty to form a board of adjustment under 45 U.S.C. § 184. The language of the statute is sufficiently clear that the Court may readily dispense with this contention. Section 184 provides that:

"It shall be the duty of every carrier and of its employees, *acting through their representatives, selected in accordance with the provisions of sections 181 to 188 of this title,* to establish a board of adjustment . . . ." (emphasis supplied).

The representation selection process to which § 184 refers is clearly the selection of a collectively-chosen representative of the craft or class of employees. Contrary to defense counsel's claim, the plaintiff's attorney is not such a collective representative and he is under no obligation to establish a board of adjustment, because the statute only addresses the majority representative of the employees.

■ In light of the above discussion, the plaintiff's only means of vindicating her rights is in the courts. Section 2 (Fourth), 45 U.S.C. § 152 (Fourth), provides in part:

"Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter. No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees . . . ."

As the 9th Circuit has stated in a similar case:

"To hold, in this case, that Burke may not bring suit for a violation of section 2 (Fourth) would leave a gap in the enforcement of that section which would blunt the effectiveness of the congressional purpose. So long as a carrier's interference with its employees' right to freely organize were swift and forceful enough to prevent organization of a union altogether . . . , the carrier would have acted with impunity." *Burke v. Compania Mexicana de Aviacion, S. A.,* 433 F.2d 1031, 1033 (9th Cir. 1970) (footnote omitted).

In accord, *see Griffin v. Piedmont Aviation,* 384 F.Supp. 1070 (N.D. Georgia, 1974); *Brady v. Trans World Airlines,* 401 F.2d 87 (3d Cir. 1968).

Accordingly, this Court finds that it has jurisdiction over the subject matter of this case, and therefore, the defendants' motion to dismiss is denied. SO ORDERED.