**Henry Wade COX, Plaintiff-Appellant,**

v.

**C. H. MASLAND & SONS, INC., a corporation, and Textile Workers Union of America, Local 1882, Defendants-Appellees.**

No. 77–2296.

United States Court of Appeals,
Fifth Circuit.

Nov. 21, 1979.

Rehearing Denied Jan. 31, 1980.

---

Robert T. Cunningham Jr., Mobile, Ala., for plaintiff-appellant.

John C. Falkenberry, Birmingham, Ala., for Textile Workers Union of America.

Thomas G. Greaves Jr., Mobile, Ala., for Marsland & Sons, Inc.

William C. Tidwell, III, Mobile, Ala., Mark S. Dichter, Francis M. Milone, Philadelphia, Pa., for defendants-appellees.

Before GODBOLD, GEE and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Henry Wade Cox contends that his employer, C. H. Masland & Sons, Inc. violated a collective bargaining agreement by firing him without just cause and by failing to reinstate him after he had been discharged, and that his collective bargaining agent, the Textile Workers Union of America, breached its duty to represent him fairly by arbitrarily, capriciously or in bad faith refusing to demand arbitration of his grievance protesting his discharge. The district court denied a jury trial to Cox and, after hearing the evidence, dismissed his suit. We conclude that Cox had a right to a jury trial, but that the evidence was so decisive that, had a jury been empanelled, the judge would have been required to enter a directed verdict in favor of the defendants, without submission of the evidence to Cox's peers, and we therefore affirm the judgment.

## I.

Masland, a carpet manufacturer, employed Cox as a shipping clerk. Cox often purchased carpet from Masland for other employees. To do so, he would place an order for a certain weight and grade of carpet with a clerk in another part of the plant, pay for the carpet and get a receipt that authorized the employee to remove the carpet from the premises.

On Friday, September 19, 1975, a fellow employee, Burkett, asked Cox to buy him a piece of carpet of the "as is" grade, weighing about twenty pounds. That grade of carpet was sold to employees for $.25 a pound, so Burkett gave Cox $5.00 to pay for it. A short while later Cox went to the clerk who could make sales, paid $2.10 for twenty-one pounds of carpet and got a receipt for the purchase of "scrap" grade carpet which sold for only $.10 a pound. When Burkett attempted to leave the plant with the "as is" grade carpet, he was sent home for taking it without a pass. On the following Monday morning, Cox learned that Burkett had been fired, but, when Cox was called to the personnel office, he claimed he had no knowledge about the incident. He, too, was fired later that morning for theft.

On September 25, Cox filed a grievance pursuant to the collective bargaining agreement between Masland and the Union. At the first step of the grievance procedure, Cox discussed the matter with his supervisor and a union representative. At the second step Cox presented a written grievance to the company. At each step, the company denied the grievance. Step three was a meeting between a company representative and the union grievance committee at which the facts of the incident and Cox's work record were reviewed by the company and the union. A settlement proposal was offered, but it was rejected by the company.

The collective bargaining agreement permitted the union to submit the grievance to arbitration if the decision in step three was

not acceptable. The union executive board met to consider the case, but it decided not to proceed to arbitration because it thought it could not win.

Cox then filed this suit against Masland and the union for compensatory and punitive damages. He later filed a motion for leave to amend by adding a jury demand which was granted by the court. Immediately before the trial, however, the judge informed the parties that the jury would be used for advisory purposes only, pursuant to Fed.R.Civ.P. 39(c). At the end of Cox's case, the court entered judgment for the defendants on their motion for involuntary dismissal under Fed.R.Civ.P. 41(b).

The issues we must decide are intertwined. The threshold determination is whether Cox had a right to a jury trial, but this depends on the nature of his claims against the company and the union. If he did not, then we must adopt the judge's factual conclusions because there was substantial evidence to support them, and our inquiry ends. If, however, Cox was entitled to a jury trial, we must decide the effect of the denial of this right.

## II.

■ The seed of Cox's claims was sown by the National Labor Relations Act (N.L.R.A.), 29 U.S.C. §§ 141–187. In order to achieve the collective bargaining recognized by the Act as national labor policy, 29 U.S.C. § 151, the statutory plan permits a majority of the employees in a unit to elect a union to serve as their collective bargaining agent. 29 U.S.C. § 159. The union represents all employees, not only its members, and is their exclusive agent. *Id.* Because the very nature of collective bargaining precludes bargaining on their own behalf by individual employees, the union has a corollary and inescapable duty fairly to represent all of the employees in the bargaining unit not only in negotiating for an agreement, but also in enforcing the provisions of that agreement throughout its term.[1] *Vaca v. Sipes,* 1967, 386 U.S. 171,

---

1. For discussions of collective bargaining and the extent of a union's duty of fair representa-

tion, *see* Blumrosen, The Worker and Three Phases of Unionism: Administrative and Judi-

177, 87 S.Ct. 903, 909–10, 17 L.Ed.2d 842; *Humphrey v. Moore*, 1964, 375 U.S. 335, 342, 84 S.Ct. 363, 368, 11 L.Ed.2d 370, 367.

■ This duty requires the union to "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. at 177, 87 S.Ct. at 910, 17 L.Ed.2d at 850. The duty is not, however, a ministerial one of satisfying each employee's demands at all costs; the union is the representative but not the servant of the employees. · It not only may, but should, exercise judgment and discretion in its representative capacity. Its duty is violated "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190, 87 S.Ct. at 916, 17 L.Ed.2d at 857.

Cox asserts two claims, one against Masland for breach of the collective bargaining agreement, and the other against the union for breach of its duty of fair representation. He seeks only monetary damages from each defendant, not arbitration or judicially-decreed reinstatement, remedies equitable in nature because they are in effect specific performance. *See* C. Wright & A. Miller, Federal Practice and Procedure § 2309 (1971). The monetary recompense for which he prays is the traditional common law remedy.

In *Vaca* the Court stated that an employee is not restricted in such circumstances to the relief that would have been available under the collective bargaining agreement.[2] Instead he may pitch his action against the employer on its alleged breach of contract and combine that charge with a claim against the union for its alleged wrongful failure to afford him his contractual reme-

dy of arbitration. 386 U.S. at 186–87, 87 S.Ct. at 914–15, 17 L.Ed.2d at 855–856. The basis of the damage claim against the employer is apparent: breach of a contract made for the employee's benefit. There may also be a damage claim against the union, for

> In some cases . . . at least part of the employee's damages may be attributable to the union's breach of duty, and an arbitrator may have no power under the bargaining agreement to award such damages against the union. In other cases, the arbitrable issues may be substantially resolved in the course of trying the fair representation controversy. In such situations, the court should be free to decide the contractual claim and to award the employee appropriate damages or equitable relief.

386 U.S. at 196, 87 S.Ct. at 920, 17 L.Ed.2d at 861.

■ The Seventh Amendment to the Constitution preserves the right of trial by jury "in suits at common law." See also the procedural recognition of the constitutional right in Fed.R.Civ.P. 38(a). The scope of this guaranty encompasses suits in which legal rights are to be determined, in contrast to those in which equitable rights and remedies alone are involved. *See Ross v. Bernhard*, 1970, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729. Since the merger of law and equity, accomplished by the adoption of the Federal Rules of Civil Procedure, the only respect in which the distinction between law and equity continues to be significant is the right to trial by jury. *See* C. Wright & A. Miller, Federal Practice and Procedure § 2302 (1971). Although the literal language of the Seventh Amendment appears to make the right to jury trial depend entirely on the procedural situation at a given moment in the past, the time when the Seventh Amendment was adopt-

cial Control of the Worker-Union Relationship, 61 Mich.L.Rev. 1435, 1482–1501 (1963); Feller, General Theory of the Collective Bargaining Agreement, 61 Calif.L.Rev. 663 (1973); Comment, Federal Protection of Individual Rights under Labor Contracts, 73 Yale L.J. 1215 (1964).

2. *Vaca* was tried to a jury, which awarded damages. The Court overruled the damage award, but only because the lower court had not adopted the proper standard for determining whether there had been a breach of the duty of fair representation.

ed, the Supreme Court has recognized that, as a result both of the evolution of legal issues and the difficulty of determining exactly how an issue unknown in 1791 would have been tried, we must also consider other factors. *Id. See Dairy Queen, Inc. v. Wood*, 1962, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44; *Beacon Theatres, Inc. v. Westover*, 1959, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988; James, Right to a Jury Trial in Civil Actions, 72 Yale L.J. 655 (1963).

*Ross* established three criteria for deciding when there is a right to a jury trial: (1) the customary manner of trying such a cause before the merger of law and equity in 1938; (2) the kind of remedy sought by the plaintiff; and (3) the abilities and limitations of a jury in deciding the issue. 396 U.S. at 538 n.10, 90 S.Ct. at 738 n.10, 24 L.Ed.2d at 736 n.10.

■■ By all of these criteria, the suit against the company for breach of its contract is a common law claim, hence one for which a jury trial may be invoked. We have not previously considered whether there is a like right for the claim against the union.[3] Applying the *Ross* criteria, the Eighth Circuit held, in *Minnis v. UAW*, 8 Cir. 1975, 531 F.2d 850, that a member of a collective bargaining unit has a right to a jury trial of his claim that the union representing him violated its duty of fair representation by failing to present a grievance against his employer.[4] We think the Eighth Circuit's rationale is apt.

Using the same analysis as the *Minnis* court, we find that Cox's claim meets all three Ross tests. He is seeking a traditional legal remedy, compensatory and punitive damages. A jury could adequately perform the duty of finding the facts and making a damage award where appropriate. Finally, while there was no pre-merger custom with respect to an exclusive bargaining agent's duty of fair representation because the duty did not exist prior to adoption of the N.L. R.A. in 1947, a breach of a duty of fair representation has been characterized as a common law tort. *See Sanderson v. Ford Motor Co.*, 5 Cir. 1973, 483 F.2d 102, 114. Furthermore, the action seeks to enforce a statutory liability, and in *Curtis v. Loether*, 1974, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260, the Supreme Court held that in a civil action to enforce a statutory liability involving legal rights and remedies there is a right to a jury trial absent evidence of contrary congressional intent.

■ We conclude that, because Cox chose to seek only the remedy of damages, he had a right to a jury trial both on the primary claim that the company discharged him in violation of the collective bargaining agreement and on the corollary contention that the Union failed fairly to represent him.

■ The defendants counter with the claim that, even if Cox had the right, he failed timely to assert it because he did not make a jury demand when he filed his complaint or within ten days after service of the last pleading, as required by Fed.R. Civ.P. 38(b).[5] The right to a jury trial, though constitutional, is, indeed, waived by failure timely to demand it. Fed.R.Civ.P. 38(d);[6] *United States v. 110 Bars of Silver*,

---

**3.** In *Sanderson v. Ford Motor Co.*, 5 Cir. 1973, 483 F.2d 102, 114, the court held that the question whether a union had acted arbitrarily, discriminatorily, or in bad faith was one for the jury and could not be resolved as a matter of law on the record in that case. The court did not, however, discuss the employee's right to a jury trial in the first place.

**4.** The plaintiff had settled his claim against the employer.

**5.** Rule 38(b) states:
Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement

of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party.
Cox stated that he thought he had originally demanded a jury by marking the cover sheet to his suit.

**6.** Rule 38(d) states:
The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by him of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

5 Cir. 1975, 508 F.2d 799, *cert. denied*, 1975, 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89. However, a court may, in its discretion, grant a belated motion for a jury trial under Fed.R.Civ.P. 39(b).[7] *See Roth v. Hyer*, 5 Cir. 1944, 142 F.2d 227, *cert. denied*, 1944, 323 U.S. 712, 65 S.Ct. 38, 89 L.Ed. 573. Although a judge is not required to allow an untimely request for a jury trial, *see Bush v. Allstate Insurance Co.*, 5 Cir. 1970, 425 F.2d 393, *cert. denied*, 1970, 400 U.S. 833, 91 S.Ct. 64, 27 L.Ed.2d 64, "when the discretion of the court is invoked . . ., the court should grant a jury trial in the absence of strong and compelling reasons to the contrary." *Swofford v. B & W, Inc.*, 5 Cir. 1964, 336 F.2d 406, 409, *cert. denied*, 1965, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557.

■ There was no reason to deny Cox a jury trial. There would have been no delay or inconvenience to the court; indeed, a jury was in fact called. There was neither prejudice nor surprise to either defendant. Although the request was not timely made, it was made sufficiently early to avoid any disruption to the court, the trial schedule or the parties' preparation. The trial judge obviously thought the motion not inexpedient, for he initially granted it. His later decision to withdraw his leave was based on the erroneous belief that Cox was not entitled to a jury trial, not on the lack of procedural regularity in the request.

Therefore, the permission should not have been withdrawn.

## III.

■ Error may be harmless. We must decide whether, had there been a jury seated in the box, all the evidence, viewed most favorably to Cox, would have withstood a motion for a directed verdict.[8] If not, then he suffered no prejudice by the absence of a jury from the courtroom, for the jurors would never have been given the opportunity to assay his case.

For Cox to succeed in his action against Masland, he must first establish that the union wrongfully refused to demand arbitration. Because the collective bargaining agreement provided a remedy, Masland, as the employer, can successfully defend an action for its alleged breach by urging that the party who contends the contract has been violated has failed to exhaust the contractual remedies. These are available only to the union, not to its members, and, therefore, the only excuse for non-recourse to these remedies would be the union's wrongful failure to pursue them. *See Vaca v. Sipes*, 386 U.S. at 186, 87 S.Ct. at 914, 17 L.Ed.2d at 855.

■ *Vaca* provides the test to determine when a union's failure to request arbitration is a breach of its duty. The Court rejected both extremes: that an individual employee has an absolute right to have his grievance taken to arbitration,[9] or that a

7. Rule 39(b) states:
 Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

8. At the close of Cox's evidence, the trial court dismissed the action under Fed.R.Civ.P. 41(b), which applies only to cases tried without a jury, rather than under Fed.R.Civ.P. 50(a), which governs directed verdicts in jury trials. Under Rule 41(b), the court is free to weigh the evidence and pass on the credibility of witnesses. *Emerson Electric Co. v. Farmer*, 5 Cir. 1970, 427 F.2d 1082. In contrast, when decid-

ing whether to grant a motion for a directed verdict under Rule 50(a), the party against whom the motion is made must be given the benefit of every legitimate inference that can be drawn from the evidence. *Boeing Co. v. Shipman*, 5 Cir. 1969, 411 F.2d 365, 374. If conflicting inferences can be drawn from the facts, the case must go to the jury. *Alman Bros. Farms & Feed Mill, Inc. v. Diamond Lab., Inc.*, 5 Cir. 1971, 437 F.2d 1295; *United States v. Bryan*, 5 Cir. 1959, 265 F.2d 698.

9. *See* Murphy, The Duty of Fair Representation under Taft-Hartley, 30 Mo.L.Rev. 373 (1965); Summers, Individual Rights in Collective Agreements and Arbitration, 37 N.Y.U. L.Rev. 362 (1962).

union has unfettered discretion.[10] If the contractual settlement machinery is not to be wrecked, a union must be given some discretion in executing its duty. The protesting employee must prove not only that his grievance was meritorious; he must also demonstrate that the union's failure to process his grievance was "arbitrary" or in "bad faith". 386 U.S. at 193, 87 S.Ct. at 918, 17 L.Ed.2d at 859.

 Explaining the limits of this discretion in *Turner v. Air Transport Dispatchers' Assoc.*, 5 Cir. 1972, 468 F.2d 297, we held that a union's discretion is confined by the duty to investigate the grievance and determine its merit. *Id.* at 299. *Accord Steinman v. Spector Freight System, Inc.*, 2 Cir. 1971, 441 F.2d 599; *St. Clair v. Local 515, International Brotherhood of Teamsters*, 6 Cir. 1969, 422 F.2d 128. After doing so, the union is entitled to weigh the costs and benefits of going to arbitration, including the chances of success and the monetary cost. *See Encina v. Tony Lama Boot Co.*, 5 Cir. 1971, 448 F.2d 1264, 1265 (per curiam).

It is undisputed that the union investigated Cox's discharge, that it pressed Cox's grievance through three steps of the contractual procedure, that its business agent was called in to handle the third step because the union wanted his additional experience, that the union offered a compromise settlement to the company in an effort to get Cox reinstated and that it decided not to take the case to arbitration only after a special conference to consider all the facts and the arguments for and against arbitration. These union actions demonstrate a serious consideration of Cox's claim.

Cox points to these factors as indicating the union's failure in its duty to him: the business agent stated that he thought the case should go to arbitration; one member of the union board, who agreed with Cox, was late to the final meeting and was not allowed to participate; and the union president stated that, although he did not believe Cox was a thief, he did believe Cox

had lied to him about the carpet incident. Considering the maximum possible cumulative impact of all these factors on the most sympathetic juror's ears, we do not think they would amount to enough to provide evidence of union bad faith. The business agent's statement was merely one individual's weighing of the pros and cons of arbitration; there is no evidence that the procedural decision to bar the tardy member was founded on any animus toward Cox; and, even if the president did base his own vote on the belief that Cox had lied to him, this consideration was not entirely irrelevant to the union's decision. Others weighing the same evidence might also have believed that Cox had lied, and this would have affected the chances of success at arbitration. All lawyers have faced the dangerous consequences of predicating a case on the testimony of a witness believed to be incredible.

 In sum, there is no evidence from which a jury might conclude that the union was arbitrary, unsympathetic or in any way less than fully responsive to Cox's claim save its failure to take the final step, that of demanding arbitration—a step it had no duty to take. It responsibly considered Cox's claim, deciding ultimately that its chances of success in arbitration were slim. Its decision was reached after full investigation and careful deliberation, precisely the opposite of conclusions reached arbitrarily or in bad faith. Therefore, we find that Cox's claim that the union was derelict in its duty would not have survived a motion for a directed verdict.

### IV.

 Because Cox's suit would not have survived a motion for a directed verdict under the standards of Rule 50(a), we hold that the failure to accord him his right to a jury trial was harmless error under Fed.R. Civ.P. 61. Therefore, we affirm the dismissal of his claims against both Masland and the union.

AFFIRMED.

10. *See* Wyle, Labor Arbitration and the Concept of Exclusive Representation, 7 B.C.Ind. & Com.L.Rev. 783 (1966).