**Robert F. ROSCELLO,**
**Plaintiff-Appellant,**

v.

**SOUTHWEST AIRLINES COMPANY and International Association of Machinists & Aerospace Workers, AFL–CIO, Airline District 146, Defendants-Appellees.**

**No. 83–2041.**

United States Court of Appeals, Fifth Circuit.

March 5, 1984.

Rehearing and Rehearing En Banc Denied April 18, 1984.

---

Patrick J. Gilpin, Houston, Tex., for plaintiff-appellant.

Manitzas, Harris & Padgett, J. Joe Harris, San Antonio, Tex., for Southwest Airlines.

John E. Collins, Irving, Tex., for Intern. Ass'n of Machinists.

Before BROWN, THORNBERRY and TATE, Circuit Judges.

THORNBERRY, Circuit Judge:

This case involves the issue of the right to a jury trial in wrongful discharge and fair representation actions under the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.* Because we conclude that the plaintiff was denied a jury trial in violation of the Seventh Amendment to the United States Constitution, we vacate and remand.

I. FACTS

Plaintiff Robert Roscello was discharged from his job by defendant Southwest Airlines Company on October 6, 1980. Prior to his discharge, Roscello had worked for Southwest Airlines at Houston's Hobby Airport for over two years. Beginning in February 1979 and continuing until his discharge, he was employed as an "Operations Agent," responsible for coordinating entry and departure of aircraft and for ensuring proper weight and balance on the aircraft.

Southwest's Operations Agents had no collective bargaining representative at the time that Roscello was promoted to Operations Agent. During August of 1980, the plaintiff had contact with the Teamsters Union regarding their efforts to become the bargaining representative for the Operations Agents. On or around September 22, 1980, Roscello placed notices of a union meeting in the time card slots of the appropriate employees. From this action and the Teamsters meeting on September 23, 1980, the plaintiff accumulated seventeen Teamster pledges out of the seventy-five or eighty Southwest Operations Agents at Hobby. Although no election between competing unions was ever held, Southwest Airlines "recognized" another union, the defendant International Association of Machinists (IAM), as collective bargaining representative for the Operations Agents on October 3, 1980.[1] Three days later, the plaintiff was fired. His termination notice listed as reasons for his firing failure to perform duties and excessive absenteeism.

The day after he was fired, Roscello contacted a representative of the IAM and sought to file a grievance over his discharge. A grievance was filed by the Union and denied by the Company on October 17, 1980. On October 20, Roscello's grievance was forwarded to the Union's district office for appeal to the second step.

On October 28, Janet Innes, another Southwest employee in the bargaining unit newly covered by the IAM, was discharged. Unlike Roscello, Innes had joined the IAM. The IAM presented the Innes case at the first step, where it was denied. Later the IAM was successful in informal negotiations which resulted in Innes' reinstatement. After Innes' reinstatement, Southwest refused to discuss any more grievances with the IAM in the absence of a collective bargaining contract.

Roscello filed suit in federal district court alleging that Southwest violated the Railway Labor Act by discharging him for

---

1. The collective bargaining contract between Southwest and IAM was not signed until March 1981.

engaging in the protected activity of union organizing.[2] In the same suit Roscello claimed that the IAM had violated its duty of fair representation under the Railway Labor Act by discriminating against him because he was not a member of the Union.[3] From the Company, the plaintiff sought reinstatement, back pay and punitive damages. From both defendants, the plaintiff sought compensatory damages for mental anguish, prospective damages for wages and benefits, pre-judgment interest on lost earnings and any alternative relief the court deemed appropriate. The district court held that the plaintiff had failed to prove his case against either defendant by a preponderance of the evidence and entered judgment for the defendants.

In this court, the plaintiff argues, *inter alia*, that the district court erred in refusing to grant his timely demand for a jury trial. If the plaintiff did not have a right to a jury trial, we must adopt the judge's factual conclusions because they are not clearly erroneous. If, however, Roscello was entitled to a jury trial, we must decide whether the denial of that right was harmless error, or whether the case must be remanded for a jury trial.

## II. RIGHT TO A JURY TRIAL

### A. The Duty of Fair Representation

■ Roscello clearly had a right to a jury trial on the fair representation aspect of his suit. A recent Fifth Circuit case not cited by the parties squarely holds that under the Seventh Amendment to the Constitution there is a right to a jury trial of a claim that a union violated its duty of fair representation. *Cox v. C.H. Masland & Sons, Inc.*, 607 F.2d 138 (5th Cir.1979). In *Cox*, the court cited *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), for the proposition that the Seventh Amendment preservation of the right to trial by jury "in suits at common law" encompasses suits in which legal rights are to be determined, in contrast to those in which equitable rights and remedies alone are involved. 607 F.2d at 142. The *Cox* court applied the three factors set out in *Ross* for deciding whether there is a right to jury trial: (1) the customary manner of trying such a cause before the merger of law and equity; (2) the kind of remedy sought; and (3) the practical abilities and limitations of juries. 90 S.Ct. at 738 n. 10. The court found that (1) Cox's duty of fair representation claim was analogous to a common law tort customarily tried to a jury; (2) Cox sought the traditional legal remedy of damages; and (3) a jury could adequately find the facts and award damages. The court therefore concluded that the plaintiff had a right to a jury trial. 607 F.2d at 143.

---

**2.** Section 2 (Fourth) of the Railway Labor Act, 45 U.S.C. § 152 (Fourth), provides in part:

> No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, ... or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization....

Section 2 (Fourth) of the Railway Labor Act is applicable to carrier by air. 45 U.S.C. § 181. The parties do not question whether the plaintiff has a private right of action for wrongful discharge under the Railway Labor Act. Therefore we assume without deciding that plaintiff has properly stated a claim. *See Burke v. Compania Mexicana de Aviacion, S.A.*, 433 F.2d 1031 (9th Cir.1970); *Griffin v. Piedmont Aviation, Inc.*, 384 F.Supp. 1070 (N.D.Ga.1974); *Adams v. Federal Exp. Corp.*, 470 F.Supp. 1356, 1361 (W.D.Tenn.1979). Fur-

thermore, there seems to be no doubt that this claim, which rests not upon a collective bargaining contract, but upon a charge that Southwest violated the statute, was within the jurisdiction of the district court rather than an adjustment board. *See Brotherhood of Trainmen v. Howard*, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); *Adams v. Federal Express Corporation*, 547 F.2d 319, 321 (6th Cir.1976), *cert. denied*, 431 U.S. 915, 97 S.Ct. 2177, 53 L.Ed.2d 225 (1977); *Conrad v. Delta Airlines, Inc.*, 494 F.2d 914, 918 (7th Cir.1974); *Kent v. Fugere*, 438 F.Supp. 560 (D.Conn.1977); *Griffin v. Piedmont Aviation, Inc.*, 384 F.Supp. 1070 (N.D.Ga., 1974).

**3.** *See Del Casal v. Eastern Airlines, Inc.*, 634 F.2d 295 (5th Cir.1981), *cert. denied*, 454 U.S. 892, 102 S.Ct. 386, 70 L.Ed.2d 206 (1981); for a general description of the duty of fair representation, *see Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

Although the *Cox* case involved a claim under the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 141–187, rather than the Railway Labor Act, the distinction is insignificant. The Union's duty of fair representation was originally derived from the Railway Labor Act, *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967), (citing *Steele v. Louisville & N.R. Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944)), and was later extended to unions certified under the NLRA. *Vaca* 87 S.Ct. at 910 (citing *Ford Motor Co. v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)). Since the *Huffman* case, the union's duty of fair representation has been the same duty whether the union involved is covered by the NLRA or the RLA. *See, e.g., International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979); *Czosek v. O'Mara,* 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970); *Seymour v. Olin Corp.,* 666 F.2d 202 (5th Cir.1982); *Del Casal v. Eastern Airlines, Inc.,* 634 F.2d 295 (5th Cir.1981), *cert. denied,* 454 U.S. 892, 102 S.Ct. 386, 70 L.Ed.2d 206 (1981). Accordingly, the *Cox* analysis establishing the right to a jury trial in NLRA cases applies with equal force to RLA duty of fair representation cases.

**B. The Wrongful Discharge Action**

■ We need not decide whether a wrongful discharge action under the Railway Labor Act is one in which a plaintiff is entitled to a jury trial under the criteria of *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). The Supreme Court mandated in *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), that where both legal and equitable issues are presented in a single case, "only under the most imperative circumstances can the right to a jury trial be lost through prior determination of equitable claims." *Id.* at 957. The factual issues common to the legal and the equitable claims must be submitted to a jury for decision on the legal claims before final court determination of the equitable claims. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 900–01, 8 L.Ed.2d 44 (1962).

■ Assuming that an action for reinstatement and back pay is equitable in nature, *Harkless v. Sweeny School District,* 427 F.2d 319 (5th Cir.1970), *cert. denied* 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439, and that this action has not automatically been converted into a legal one by adding unsupported allegations of compensatory and punitive damages, *Lynch v. Pan American World Airways, Inc.,* 475 F.2d 764 (5th Cir. 1973), what we have in this case is a legal claim—the fair representation claim—joined with an equitable claim—the wrongful discharge claim. Since a union may refuse to prosecute a nonmeritorious grievance, *Vaca v. Sipes, Del Casal v. Eastern Airlines,* the issue of whether the plaintiff was in fact wrongfully discharged is common to both the wrongful discharge action and the fair representation action. Following *Beacon Theatres* and *Dairy Queen,* we hold that the trial court must submit to the jury the factual issues common to the wrongful discharge and the fair representation claims before the court makes a final determination on Roscello's wrongful discharge action. *See also Eli Lilly and Company v. Generix Drug Sales, Inc.,* 460 F.2d 1096, 1107 (5th Cir.1972).

**III. EFFECT OF THE DENIAL OF A JURY TRIAL**

Since we have decided that Roscello was entitled to a jury trial on the fair representation claim and on the facts common to the wrongful discharge and fair representation claims, we must decide the effect of the denial of that right. If all of the evidence, viewed most favorably to Roscello, would have withstood a motion for a directed verdict,[4] the error of refusing a jury demand

---

4. In the instant case, the defendant union urged a motion for "instructed verdict" both at the close of the plaintiff's evidence and at the close of all the evidence in the case. The defendant Company moved for an "instructed judgment." Apparently treating these Texas equivalents to motions for directed verdict as motions for involuntary dismissal under Fed.R.Civ.P. 41(b),

cannot have been a harmless one. *See Cox,* 607 F.2d at 144. Our standard for determining whether the evidence was sufficient to go to a jury is provided by *Boeing v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc):

> the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

## A. The Wrongful Discharge Claim

### 1. The Standard

The Supreme Court in the past has looked to the National Labor Relations Act for assistance in construing the Railway Labor Act. *Brotherhood of Ry. Trainmen v. Terminal Co.,* 394 U.S. 369, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969). The Seventh Circuit

has utilized the standard from cases under NLRA §§ 8(a)(1) and 8(a)(3) to determine whether an employer has discharged an employee in violation of § 152 of the Railway Labor Act. *Conrad v. Delta Air Lines, Inc.,* 494 F.2d 914 (7th Cir.1974). Accordingly, we look for guidance to a recent NLRA Supreme Court case describing the National Labor Relations Board decisions as to what constitutes a violation of §§ 8(a)(1) and 8(a)(3): "the unfair labor practice consists of a discharge or other adverse action that is based in whole or in part on anti-union animus—or as the Board now puts it, that the employee's protected conduct was a substantial or motivating factor in the adverse action...." *N.L.R.B. v. Transportation Management Corp.,* —— U.S. ——, 103 S.Ct. 2469, 2474, 76 L.Ed.2d 667 (1983).

The Fifth Circuit, in discussing an N.L.R.B. case where the discharge was based on pretext, stated,

> The proffering of legitimate business reasons for the disciplinary action does not end the inquiry, for it must be determined whether these reasons are bona fide or pretextual.... [I]f the suggested reasons are a mere litigation figment or were not relied upon, then the determination of pretext concludes the inquiry.

*Marathon Le Tourneau Co., Longview Div. v. N.L.R.B.,* 699 F.2d 248, 252 (5th Cir.1983).

Where, however, the employer had real reasons and in fact relied upon them in part for the discharge, the case is characterized as a "dual-motive" one. In such a dual motive case, as the Supreme Court recently confirmed in *Transportation Management Corp.,* the employer bears the risk that the influence of legal and illegal motives cannot be separated. *Id.* 103 S.Ct. at 2475. After the employee fulfills the initial burden of persuasion that an anti-union animus contributed to the employer's decision, the employer can avoid the finding that it violated the statute by demonstrating by a preponderance of the evidence that the worker

---

the trial court denied both. In contrast, the *Cox* trial court granted the motion for dismissal under Rule 41(b). The Fifth Circuit held in *Cox* that although there was a clear right to a jury

trial in a fair representation action, the denial of the right in that case was harmless error. 607 F.2d at 145.

would have been fired even if he had not been involved with the Union. *Id.* at 2471.

Without determining whether the instant case may be characterized as either pretextual or dual-motive, we proceed to examine the evidence as to the wrongful discharge claim.

2. The Evidence

The evidence is conflicting as to whether Roscello's union activity was a substantial and motivating factor in Southwest's decision to fire him. As to the Company's knowledge of Roscello's union activity, Lowell McAllister, the Station Manager of Houston Hobby during September of 1980, testified that someone had told him that employee Roscello had put up notices of a union meeting. In a letter to the Operations Agents announcing Southwest's recognition of the IAM as exclusive bargaining agent for the class, the management stated: "Your company has preferred to work with our ticket agents and operations agents withour [sic] a union. However, in the past several months a number of ticket agents and operations agents have expressed a desire to be represented by a union. There have been expressions of support for the Transport Workers Union, the IAM, and recently the Teamsters...." A witness for the plaintiff who worked for Southwest Airlines at the time of the plaintiff's discharge testified without objection concerning an anonymous letter she wrote to Roscello: "I wrote that rumor has it that the management is going through his file to find due cause for firing him, due to his union activities. In fact I think I used Teamster Union activities, and to be cautious of fellow employees...." Furthermore, the plaintiff testified without objection that the station manager for Southwest Airlines told Roscello that he "was given the shaft by the airline" and advised Roscello to obtain an attorney and fight the matter in court.

The Company, on the other hand, presented testimony concerning an audit purporting to show that the flight papers Roscello prepared on the job were 100 per-cent wrong. A spokesman for the Company testified that the audit was done in preparation for a visit by an official of the Federal Aviation Administration, but the Company could not produce the audit at trial. Such an audit had never been done before the time of the plaintiff's protected activity, nor has one been done since. The written Notice of Discharge listed as reasons for the plaintiff's termination failure to perform duties and excessive absenteeism. However, Roscello's attendance record showed only one absence in two years.

3. Sufficiency

As to what evidence will suffice to show discharge based on anti-union animus, the Fifth Circuit has stated: "Overt direct evidence of anti-union animus, a rarity at best, is not a prerequisite to a finding of improper motive." *N.L.R.B. v. Brookwood Furniture, Div. of U.S. Industries,* 701 F.2d 452, 465 (5th Cir.1983). Circumstantial, as well as direct evidence may be utilized in the determination. *Id.* at 464. The timing of a discharge "at the heel of a union organizing campaign," and significant length of tenure as an employee without reprimands are factors which may be taken into account in determining whether an employee was wrongfully discharged. *Id.* at 465.

The evidence in the instant case is similar to what passed muster as sufficient in *Transportation Management Corp.* and *Brookwood.* Here, as in *Transportation Management Corp.,* the finding of anti-union motive was based on what other employees had heard. Here, as in *Brookwood,* the plaintiff was employed for a substantial period of time without significant reprimand for his work before being fired. Finally, the timing of Roscello's discharge, only three days after another union was recognized as collective bargaining agent, is a factor that a jury could take into account in determining that Roscello's protected conduct was a substantial or motivating factor in the adverse action.

While we cannot conclude that the district court's fact findings concerning the wrongful discharge claim are clearly erro-

neous, we do find here sufficient evidence from which a jury could have made the opposite determination.

## B. The Fair Representation Claim

### 1. The Standard

 *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the leading case on the duty of fair representation, established the standard for determining when that duty has been violated: "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* 87 S.Ct. at 916. The Union's duty to represent extends to all members of the bargaining unit, not just to members of the Union. *Abilene Sheet Metal, Inc. v. N.L.R.B.,* 619 F.2d 332, 347 (5th Cir.1980); *Smith v. Local No. 25, Sheet Metal Workers International Association,* 500 F.2d 741, 749 (5th Cir.1974). A union violates its duty of fair representation by discriminating between members of a bargaining unit on the basis of the person's status as a nonmember of the union. *Del Casal v. Eastern Airlines, Inc.,* 634 F.2d 295, 300–01 (5th Cir.1981), *cert. denied,* 454 U.S. 892, 102 S.Ct. 386, 70 L.Ed.2d 206 (1981); *Hughes Tool Co. v. N.L.R.B.,* 147 F.2d 69 (5th Cir.1945).

### 2. The Evidence

 Counsel for the defendant IAM conceded at oral argument that the Union had a duty to fairly represent Roscello even though Roscello was fired only three days after the Company "recognized" the Union as exclusive bargaining agent and months before a collective bargaining contract was signed. The Union simply contends that the fact that it was successful in gaining reinstatement for union member Janet Innes but not for nonunion member Robert Roscello does not mean that it discriminated between the two.

The plaintiff, on the other hand, presented evidence that the Union representative, Leonard David, failed to respond to the plaintiff's certified letter and phone calls regarding the Union's appeal of his grievance. When the plaintiff's wife reached Mr. David on the phone, she asked him if the IAM had any plans for helping her husband regain his job at Southwest Airlines. Joyce Roscello testified without objection: "He said no, because he had not signed a union card. And I said, 'Well, if you will recall, the union got Janet Innes' job back in Midland,' and he said, 'well, that was because she had signed a union card....'"

### 3. Sufficiency

While, again, we cannot rule the district court's findings of fact concerning the duty of fair representation clearly erroneous, we think that a reasonable jury could infer from the evidence that the Union impermissibly discriminated between Janet Innes, a union member, and Robert Roscello, a nonunion member.

## IV. CONCLUSION

"'Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.'" *Beacon Theatres v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 952, 3 L.Ed.2d 988 (1959), quoting *Dimick v. Schiedt,* 293 U.S. 474, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1934). Having concluded that Roscello was entitled to a jury trial under the Seventh Amendment to the Constitution, we have proceeded to examine whether denial of that right constituted harmless error. Although the question may be a close one, "Close cases are precisely those that our system most readily entrusts to a jury. Whatever view of the evidence we might have taken ourselves, we must 'avoid usurping the function of the jury by weighing evidence and judging credibility; our function is limited to determining whether there is a conflict in substantial evidence sufficient to create a jury question.'" *Schwartz v. Sears, Roebuck & Co.,* 669 F.2d 1091 (5th Cir.1982) (quoting *Two Rivers Co. v. Curtiss Breeding Service,* 624 F.2d 1242, 1249 (5th Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 348 (1981)).

Finding in the record sufficient evidence from which reasonable people might draw differing conclusions, we vacate the judgment and remand for a jury trial.

VACATED AND REMANDED.