In re EXPRESS ONE INTERNATIONAL, INC., Debtor.

Bankruptcy No. 95–41189.

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

Jan. 5, 1999.

130

David Parham, Strasburger & Price, LLP, Dallas, TX, John F. McCarthy, Jr., Littler, Mendelson, Fastiff, Tichy & Mathiason, P.C., Dallas, TX, for debtor.

Hal Gillespie, Gillespie, Rozen, Tanner & Watsky, P.C., Dallas, TX, for Ray J. Sweeney, Harvey Thurber, and the International Brotherhood of Teamsters.

## OPINION

DONALD R. SHARP, Chief Judge.

NOW before the Court for consideration are the Objections of Express One International, Inc., to Claims Numbered 458, 459 and 460 Filed [respectively] by Harvey Thurber, Ray J. Sweeney and the International Brotherhood of Teamsters. At the conclusion of the consolidated hearing, the matters were taken under advisement. This opinion constitutes the Court's findings of fact and conclusions of law required by Fed.R.Bankr. Proc. 7052 and disposes of the issues before the Court.

## JURISDICTION

This Court has jurisdiction over the within proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(1) and (b)(2)(B).

## FACTUAL AND PROCEDURAL HISTORY

On June 5, 1995, Express One International, Inc. ("Debtor"), filed for relief under Title 11, Chapter 11 of the U.S. Bankruptcy Code. The Debtor retained control of its assets and operates its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. The Debtor is in business as an air carrier, transporting cargo and mail. On or about August, 1993, Ray J. Sweeny (hereinafter

"Sweeny") and Harvey Thurber (hereinafter "Thurber") were hired by the Debtor as pilots. Sweeny's employment was terminated on or about January 12, 1994. Thurber's employment was terminated on or about January 18, 1994. Thereafter, in December, 1994, Harvey and Thurber, together with the International Brotherhood of Teamsters, AFL—CIO (hereinafter "IBT") initiated a case in the U.S. District Court for the Northern District of Texas, Dallas Division, styled *International Brotherhood of Teamsters, AFL—CIO, Harvey Thurber and Ray J. Sweeney, Jr., v. Express One International, Inc.,* and assigned Civil Action No. 3:94–CV–465–H. Thurber, Sweeney and the International Brotherhood of Teamsters' Second Amended Complaint and Jury Demand (hereinafter the "Complaint") alleges that Thurber and Sweeney were wrongfully terminated as a response to their union organizing activities and that the Debtor engaged in anti-union activities unlawful under the Railway Labor Act ("R.L.A."). The Complaint seeks among other things, compensatory damages and punitive damages, lost wages and benefits, both past and future, reinstatement, injunction (abandoned pursuant to a Joint Pre–Trial Order filed in the case), pre and post judgment interest, costs of suit and attorneys fees. The Debtor denied the allegations.

The automatic stay provided in 11 U.S.C. § 362 became effective upon entry of this Court's June 5, 1995, Order for Relief under Title 11 of the U.S.Code. On July 24, 1995, Thurber, Sweeny and IBT (the "Claimants") filed unsecured proofs of claims in this case. All three claims, designated Claims 458, 459 and 460, were filed as unliquidated. The basis of the claims as reflected on the face of each is "wrongful termination of Harvey Thurber & Ray J. Sweeny, Jr., killing union drive in violation of 45 U.S.C. Sec. 152, plus attorneys fees." No itemization setting forth any of the amounts sought, including the "lost wages and benefits" or even of the attorneys fees to the date of filing, was attached either to the Complaint or to the proofs of claims. The claimants supported each proof of claim by attaching and adopting the Complaint filed in the Federal District Court proceeding. The District court proceeding was not removed to this Court.

The Debtor filed an Objection to all three Claims (referred to cumulatively hereinafter simply as the "Objection"). The Objection seeks disallowance of the Claims on the grounds that they have no basis in fact or in law and no documentation or factual support justifying the amounts claimed. In addition, the Objection asserts that the claims should be disallowed because they seek punitive damages and other categories of damages which do not represent actual pecuniary losses. The Objection to the IBT Claim also asserts that IBT has no standing to assert claims on behalf of Sweeny and Thurber, given that the U.S. District Court entered an order dismissing IBT as a plaintiff for lack of standing finding that the union had no standing to assert claims on behalf of individual pilots whom it was not certified to represent.[1] At the time of the hearing, this Court deferred ruling on the issue of standing until after hearing the evidence. The Debtor also asserted in its Objection that allowance of any claim should be limited only to the amount of actual pecuniary loss that the claimants can prove they suffered, allowing for mitigation of damages. Finally, the Debtor asserts in the Objection that the attorneys fees sought are without proper legal basis. This Court orally disallowed the claim for punitive damages at the beginning of the hearing.

The Claimants filed Responses to the Objection prior to the hearing requesting that their claims be allowed in full, opining that Debtor's objection was premature given a pending Motion for Relief From the Automatic Stay to resume the District Court action. The Response alleges that it would be impossible for Sweeny and Thurber to produce further documentation supporting their claims until a final judgment could be rendered in the Federal District Court and reasserted the propriety of their claims for punitive damages and attorneys' fees. With

---

1. IBT stated in its Motion for Relief From Automatic Stay filed in the instant bankruptcy case on or about December 26, 1995, that it retains the right to move Judge Sanders to reconsider his ruling and to appeal the ruling after final judgment is rendered.

respect to IBT's dismissal from the Federal District Court proceeding, IBT merely stated that it "desired to request" reconsideration or to appeal. Inasmuch as the Court had denied the Motion for Relief from Automatic Stay, the plea of prematurity was overruled and all matters were set for hearing.

Prior to the hearings on the Debtor's Objection, the claim amounts were quantified through the Trial Brief of Creditors IBT, Thurber and Sweeny filed with the Court on June 12, 1996. The Brief sets damages for Thurber at $36,121.00 and for Sweeny at $50,768.00. IBT sets forth a calculation of its claim for damages in its Supplemental Trial Brief filed with the Court. Those amounts, as of the dates of the trial, were $338,256.00 in lost dues, $66,762.73 for attorneys' fees and $8,159.00 in expenses. At trial, Claimants' counsel gave testimony which increased attorneys' fees sought to $100,335.00. IBT fails to distinguish between costs of District Court litigation and costs of Bankruptcy Court litigation. As further support of their claims, after the conclusion of the hearings on the Objections, the Debtor and Claimants filed a pleading stipulating as to Sweeny's post-petition earnings. The Trial Brief of Claimants provides information as to Thurber and Sweeny's base rates of pay and identifies the number of months without income or with reduced income. The Court makes no finding as to the accuracy of these claimed amounts. At the conclusion of a three day trial, the parties were instructed to file briefs after which the matters would be under advisement.

## ISSUE

Whether Claimants adduced sufficient evidence to prove the validity of their claims for damages arising from wrongful termination and for expenses by a preponderance of the evidence standard?

## DISCUSSION OF LAW

### THE BURDEN AND STANDARD OF PROOF

 Federal Rule of Bankruptcy Procedure 3001(f) gives the following evidentiary effect to the filing of a proof of claim—"A proof of claim executed and filed in accordance with the rules shall constitute prima facie evidence of the validity and amount of the claim." An objecting party must produce evidence rebutting the claimant, or the claimant will prevail. *In re WHET, Inc.*, 33 B.R. 424, 437 (Bkrtcy.D.Mass.1983). The traditional standard of proof imposed upon a creditor seeking to have its claim allowed is by a preponderance of the evidence. *In re Koch*, 83 B.R. 898, 17 B.C.D. 449 (Bkrtcy.E.D.Pa. 1988). Although the burden of production shifts to the objecting party, the burden of persuasion by a preponderance of the evidence remains with the claimant: "If, however, evidence rebutting the claim is brought forth, then the claimant must produce additional evidence to 'prove the validity of the claim by a preponderance of the evidence' ". *California State Board of Equalization v. The Official Unsecured Creditors' Committee (In the Matter of Fidelity Holding Co., Ltd.)*, 837 F.2d 696, 697 (5th Cir.1988). See also: *In re WHET, Inc.*, 33 B.R. 424, 437 (Bkrtcy. D.Mass.1983).

 "Preponderance of the evidence" means: "Evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not." *Braud v. Kinchen*, 310 So.2d 657, 659 (La. App. 1st Cir.1975). It is evidence which is more credible and convincing than the other evidence brought. The standard is more than a "scintilla" of evidence and less than "clear and convincing". A preponderance of the evidence means "by the greater persuasive force thereof, and not the greater volume thereof, or the greater number of witnesses testifying thereto". *Liechti v. Roche*, 198 F.2d 174, 177 (5th Cir.1952). Accordingly, it is incumbent upon Claimants, whose claims have been objected to by the Debtor, to prove the extent and validity of their claims by a preponderance of the evidence. Likewise, the standard of proof in an action for wrongful discharge outside the bankruptcy court is a preponderance of the evidence standard. *N.L.R.B. v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983).

■ It is uncontroverted that Thurber and Sweeny were employed as pilots pre-petition by the Debtor and that their employment was terminated against their will. Thurber and Sweeny do not attempt to state a cause of action for wrongful discharge under Texas law, nor could they sustain one on the record before this Court.[2] Thurber and Sweeny's claims are based solely on their argument that they were engaged in unionizing activities and that when that activity became known to the management of Debtor, they were discharged for that reason alone.

■ The claim of the IBT is much different and can be disposed of rather quickly. This Court has been urged to ignore the District Court's ruling that the IBT lacked standing to assert claims on behalf of Thurber and Sweeny absent proof that they had been certified as a bargaining agent to represent Thurber and Sweeny. This Court will not do so. The law is clear that the District Court was correct and that the IBT has no standing to proceed on behalf of either Thurber or Sweeny. However, the IBT claim goes beyond merely supporting Thurber and Sweeny. The IBT alleges that it has suffered damages because of the actions of Debtor and that it is entitled to damages. The claim of IBT is that because of the wrongful discharge of Thurber and Sweeny, the unionization of the pilots of Debtor was not completed and therefore, IBT has suffered damages in the form of lost revenues resulting from the union dues that it would have collected upon the completion of the union drive. IBT also asserts that it is entitled to recover all attorney fees it expended in its attempts to vindicate its rights.

■ The IBT claim fails for lack of proof. Even if we were to assume, for purposes of argument, that Thurber and Sweeny were dismissed wrongfully because of their union activities, there is still no proof that the union activity would have been successful and

no proof that IBT would have ever collected one dime in union dues. In fact, IBT did not even attempt to produce any evidence to demonstrate this fact but seemed to take the position that the Court could assume that the union drive would have been successful had it been completed. The Court need spend no further time on the IBT claim because of the total failure to prove any entitlement to damages.

■ Thurber's and Sweeny's claims rise or fall on the resolution of one direct issue. That is, whether or not they were wrongfully discharged by Debtor in violation of the Railway Labor Act because their employment as pilots was terminated because of their participation in union organizational activities on behalf of the IBT. The R.L.A. does not explicitly provide a private right of action for wrongful discharge, however, the Courts have concluded that a private right of action exists for non-unionized employees for violations of rights provided them by the R.L.A. and many cases have adopted standards analogous to those employed in cases under the National Labor Relations Act ("N.L.R.A."). *Beckett v. Atlas Air, Inc.* 968 F.Supp. 814, 817 (E.D.N.Y.1997). In the past, the Supreme Court has looked to the N.L.R.A. for assistance in construing the R.L.A.. *Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969), reh. denied 394 U.S. 1024, 89 S.Ct. 1622, 22 L.Ed.2d 51 (1969). *Roscello v. Southwest Airlines Co.*, 726 F.2d 217 (5th Cir.1984) and *Marathon LeTourneau Co., Longview Div. v. N.L.R.B.* 699 F.2d 248 (5th Cir.1983).

### FOUR ELEMENT N.L.R.A. TEST

■ Under the N.L.R.A. standards, "a wrongful termination plaintiff must demonstrate: (a) he was engaged in activity protected by the R.L.A.; (b) defendant was aware of the activity; (c) defendant harbored

---

**2.** In Texas jurisprudence, the underlying law of a case in this District under the Erie Doctrine, generally, to establish a cause of action for wrongful termination, an employee must establish (1) that the employee and employer have a contract that specifically limits the right to terminate the employment and (2) that the contract is in writing. *Webber v. M.W. Kellogg, Co.*, 720

S.W.2d 124, 128 (Tex.App.—Houston [14th District] 1986, writ ref'd n.r.e.). Otherwise, employment is terminable at will and without cause by either party. [Cites omitted.] When an employment contract is oral and of no definite time period, it is terminable at will by either party. *Clear Lake City Water Auth. v. Clear Lake Utilities Co.*, 549 S.W.2d 385, 390 (Tex.1977).

animus toward the protected activity; *and* [emphasis added] (d) the animus was a causal factor in plaintiff's termination. See *Carry Cos. of Ill., Inc. v. N.L.R.B.*, 30 F.3d 922, 927 (7th Cir.1994)". *Beckett v. Atlas Air, Inc.*, 968 F.Supp 814, 817 (E.D.N.Y.1997) and *Wright Line v. Lamoureux*, 251 N.L.R.B. 1083, 1980 WL 12312 (1980), enf'd, 662 F.2d 899 (C.A.1 1981), cert. denied, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982). In addition, in this case, the Claimants' must prove that the terminations, if found to be wrongful, gave rise to, inter alia, monetary damages in the form of lost wages and attorneys fees resulting from the prosecution of their claims. The Court will examine the evidence with respect to the four elements of the N.L.R.A. test.

### (A) Whether claimants were engaged in activity protected by the R.L.A

■ Claimants' attempts to persuade the Court that they were instrumental in conducting organizational activity on behalf of the International Brotherhood of Teamsters as of the month of October 1993 are unavailing. There is insufficient evidence to show that Sweeny and Thurber were the "key" union organizers and activists that they are purporting themselves to be. Testimony of the witnesses is inconsistent and often self-contradictory. Officers of IBT, Ray Benning and Donald Treichler, testified that they had, respectively, no meetings in person with Sweeny or Thurber and no or minimal telephone contact with Sweeny and Thurber in connection with the campaign at Express One. This, despite the fact that Benning had earlier asserted that Thurber and Sweeny were his key employee organizers. Actually, the only evidence of legitimate union organizational activity shows that the activity occurred during the summer of 1993 when a group of approximately one dozen crew members evidenced interest in unionization and contacted the Teamsters airline representative, Don Treichler. Treichler admitted that this group of individuals who showed an interest in organizing did not include Thurber and Sweeny and as of the trial of this action Treichler was aware of no retaliatory action taken against any of the acknowledged interested parties. No witnesses were brought forward to attest to Sweeny or Thurber's actions with respect to organizing the union, passing out union literature or enlisting potential members. The evidence shows that neither Express One management nor the National Mediation Board were advised of Sweeny and Thurber's status as organizers. In fact, both Thurber and Sweeny referred to the organizational campaign as "an underground" campaign insofar as they were involved. Specifically, neither Thurber nor Sweeny ever told any member of management that they were supportive of the Teamsters Union or that they were actively engaging in any form of organizational activity. Therefore, the evidence does not support a finding that Claimants were engaged in activity protected by the R.L.A.

### (B) Whether Debtor was aware of the activity

■ Thurber's and Sweeny's covert activities, if any, were unlike those of the button wearing, handbill distributing, openly active activities of the Plaintiffs in *Marathon Le-Tourneau Co., Longview Div. v. N.L.R.B.*, 699 F.2d 248 (5th Cir.1983), in which the Court held that evidence supported findings that employees' tardiness and absence records were a pretext for dismissal. Sweeny and Thurber's actions, if any, were unlike those of the discharged employee, Kawonies McElhenney, in *N.L.R.B. v. Brookwood Furniture, Div. of U.S. Industries*, 701 F.2d 452 (5th Cir.1983) (No. 81–4475), in which Mr. McElhenney was a known, active member and an early adherent to the union. Mr. McElhenney advised management that he was in the process of organizing a union and the union advised management in writing of the names of individuals engaged in the organizational activities. *Id.* at 457 and 458. The documentary evidence produced dated December 15, 1993, that indicates that Kevin Good, President of Express One, knew of the union organizing activity on or about the time of the terminations simply misses the point. There is no proof that he knew of organizational activities by Claimants.

Claimants also attempted to show knowledge on the part of Debtor's management by

secretly tape recording a conversation Thurber had with Claude F. McGill. Although the tape was of extremely poor quality, the Claimants introduced it into evidence with the assertion that it demonstrated conclusively that McGill knew of the organizational activity and knew that Thurber's termination was because of the activity. The tape totally fails to prove the Claimant's position. Although it is clear that Thurber continuously refers to the termination because of unionizing activities and continuously attempts to get McGill to concur in his assessment, McGill does not do so. It is clear that this secret tape recording is nothing but an after-the-fact attempt by Thurber to bolster his case and McGill fails to offer him any support. The most that can be said of the tape is that it demonstrates that McGill was not instrumental in making the decision to terminate Thurber and Sweeny and that he either does not know why they were terminated or is unwilling to express an opinion to Thurber as to why they were terminated. The evidence fails to link Express One's management's knowledge of the union activity with either Thurber or Sweeny and so Claimants fail with respect to this element of the test.

### (C) Whether Debtor harbored animus toward the protected activity

 There is evidence that the Debtor harbored animus toward unionization. Testimony read into the record by Debtor's counsel from the deposition of a non-management level Express One employee, a first officer with the Debtor, indicated that the Debtor had an anti-union policy for economic reasons and/or reasons of maintaining Express One's positive regard in the eyes of its clientele. The first officer emphasized that the anti-union position was a matter of preference more than policy and that it was a position based upon business judgment subject to change. The deposition testimony of McGill corroborates that the first officer properly represented that such was the Debtor's position at the time. The Court, therefore, finds that there is a scintilla of evidence that there was animus toward unionization. Merely demonstrating opposition to union organizing efforts is not enough. Employers and supervisors may openly express anti-union sentiment verbally or in writing without committing unfair labor practices, provided that expressions contain no threat of reprisal or force or promise of benefit. National Labor Relations Act, § 8(c), as amended, 29 U.S.C.A. § 158(c). The testimony of Thurber and Sweeny, as parties and as claimants, concedes that no management person at Express One ever threatened either—individually, directly or personally—with respect to union activity. Merely finding that Debtor did not want a union to be organized is not sufficient under the four element test. Claimants must still prove that the terminations were wrongful because they were motivated from the Debtor's animus towards union organizing activity *as opposed to being the result of other "unprotected conduct." Carry Companies of Illinois, Inc., v. NLRB*, 30 F.3d 922 (7th Cir. 1994.) "An employer is free to discharge any employee for unacceptable work attitude or performance, for 'Congress did not intend §§ 8(a)(3) to provide a shield for the incompetent or the unworthy.'" *TRW, Inc. v. N.L.R.B.*, 654 F.2d 307, 312 (5th Cir.1981). See also *N.L.R.B. v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983) and *Wright Line v. Lamoureux*, 251 N.L.R.B. 1083, 1980 WL 12312 (1980), enf'd, 662 F.2d 899 (C.A.1 1981), cert. denied, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982).

### (D) Whether the animus was a causal factor in claimants' termination

 Anti-union animus cannot be the moving cause of the dismissal. *N.L.R.B. v. Turner Tool & Joint Rebuilders Corp.*, 670 F.2d 637 (5th Cir.1982). *Marathon LeTourneau Co., Longview Div. v. N.L.R.B.* 699 F.2d 248 (5th Cir.1983). "Like every finding of fact, the conclusion that an employer's conduct was motivated by anti-union animus is accepted and given credence only if supported by substantial evidence on the record as a whole." *N.L.R.B. v. Gulf States United Tel. Co.*, 694 F.2d 92 (5th Cir.1982) citing to *Universal Camera Corp. v. N.L.R.B.; N.L.R.B. v. Walton Mfg. Co.*, 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962). See *Pioneer Natural Gas Co. v. N.L.R.B.*, 662 F.2d 408 (5th Cir.1981). No evidence has been ad-

duced to create a nexus between the Debtor's alleged knowledge of the campaign and Thurber and Sweeny's alleged roles in that campaign. Both Thurber and Sweeny testified that they told no one on a management level about their union activity or of their contemplated union activity. Moreover, Thurber vehemently denied such activity in his taped conversation with McGill. No witness was brought forward who could testify to this critical element of scienter, i.e. that management linked union activity to Thurber or Sweeny. The general policy statements against union activity that are alleged to have been made to trainees in induction classes, which Claimants characterize as threatening, were not made to them personally or in response to perceived wrongdoing. Such policy and precautionary statements do not rise to the level of evidence required to sustain the allegations. *Carry Companies of Illinois, Inc., v. NLRB,* 30 F.3d 922 (7th Cir.1994.) Moreover, the statements have not been corroborated by non-party witnesses. The documentary evidence produced dated December 15, 1993, that indicates that Kevin Good, President of Express One, knew of the union organizing activity on or about the time of the terminations, fails to link that knowledge with either Thurber and Sweeny or with their terminations. Sweeny's testimony at trial was that neither Good, nor Ernst nor any management level person at Express One ever threatened him in connection with his union organizing activity. Thurber testified likewise. The nexus is further attenuated by Ray Benning and Donald Treichler's testimony that they had, respectively, no or minimal contact with Sweeny and Thurber in connection with the campaign at Express One. If Claimants intended their activity to be covert, they succeeded to the extent that this Court cannot conclude by the preponderance of the evidence that management both knew of the activity and identified Sweeny and Thurber as the perpetrators.

The taped conversation referred to earlier and the transcript of McGill's oral deposition, both of which were offered into evidence at the trial, together with Harvey Thurber's Affidavit (Defendant's Exhibit T) do not substantiate that the terminations were directly a result of unionizing activities as opposed to failure to fulfill job responsibilities. The taped conversation does establish that McGill was aware of the job performance complaints against Sweeny and Thurber. Portions of the conversation that Thurber characterizes as "unqualified agreement" (Reply Brief at Page 4) can as easily be interpreted as amelioration or sympathy. The persuasiveness of the inferences and conclusions that Claimants derive from the taped conversation does not satisfy a preponderance of the evidence standard alone or taken into consideration with the evidence adduced by the Debtor. In addition to witnesses' trial testimony and Thurber's deposition testimony, the Debtor has produced the following evidence in support of its Objections: Plaintiff's Exhibits 4 (Defendant's Exhibit F) and 7 (written letters warning Thurber about his behavior) and disparities between Sweeney's cross examination testimony and his pilot log book (Defendant's Exhibits GG & V).

Unrebutted testimony elicited at the trial proved that both Sweeny and Thurber were within the probationary period in their jobs. The Courts frequently consider the element of tenure when examining wrongful termination cases. *N.L.R.B. v. Brookwood Furniture, Div. Of U.S. Industries,* 701 F.2d 452 (5th Cir.1983) (No. 81–4475) and *Roscello v. Southwest Airlines Co.,* 726 F.2d 217 (1984). Unrebutted testimony at the hearings proved that on at least one occasion for each pilot, a flight was delayed or missed completely. Unchallenged testimony stated that each was reputed to wander around and not be present when needed as a "hot reserve". Missed and delayed flights absent justifiable cause such as dire circumstances are reasonable grounds upon which to terminate pilots' employment given the industry standards indicated in testimony. Unrebutted testimony was proffered at the hearings that complaints had been received respecting Sweeny and Thurber, which complaints were from a client of the Debtor's and could reasonably have jeopardized the business relationship between the client and the Debtor. Other evidence was offered indicating that flight personnel were "agitated" by Sweeny (Sweeny's trial testimony June 13, 1996), uncomfortable working

with Thurber (McGill's deposition) and that neither was a "team player" (Zubarik's testimony which was neither challenged nor rebutted.) It was unrebutted that Thurber had a *pattern of antagonistic interactions* with co-workers.

As additional proof that they were terminated for union activity Sweeny, Thurber and the IBT argued that their files were devoid of the written warnings discussed under the policy manual, which they believed were prerequisite to termination and that they were not given the opportunity to reform given to other employees. The Court's reading of the Express One policy and procedure manual (Defendant's Exhibit "W") with respect to disciplinary procedures and the probationary period reveals that an errant employee "may" be provided written notice, not that management was required to provide written notice. Moreover, Defendant's Exhibit "F" is such a warning.

Given that the probationary period was in effect, given that Sweeny and Thurber each, respectively, either missed or delayed flights, given that each had a record of complaints against them, this Court finds that *regardless* of the veracity of Sweeny's and Thurber's alleged insubordinations or "disruptions" and regardless of any activity, perceived or actual respecting union organization, whether those activities were in fact known, merely perceived or "underground", Sweeny and Thurber were subject to termination for other, just causes. In other words, Claimants have failed to prove by a preponderance of the evidence that there were no additional grounds upon which Sweeny and Thurber's respective terminations were based or could have been based. Therefore, Claimants have not met the four elements of the N.L.R.A. test and have not sustained their burden of proof with respect to the "wrongful" nature of the terminations. If the terminations were not wrongful, the issue of calculation of monetary damages for lost wages and attorneys fees for same becomes moot.

3. It is noteworthy that IBT has been denied both standing and relief for damages related to campaign expenses in the case of *International Brotherhood of Teamsters v. American West Airlines,*

*CONCLUSION*

*SWEENY AND THURBER'S CLAIMS*

While the evidence presented to this Court is sufficient to show that some level of anti-union sentiment existed at Express One at the time of the terminations, Claimants have not shown by a preponderance of the evidence that Sweeny and Thurber were engaged in activity protected by the R.L.A. Claimants have failed to adduce adequate evidence upon which this Court can find that Express One's management knew of the activity and, in turn, directly connected Sweeny and Thurber to union activity, whether perceived or actual. Claimants have failed to prove by a preponderance of the evidence that union activity or "perceived" union activity was either a sole or contributing cause of Sweeny and Thurber's terminations, there being other just causes for both terminations. Accordingly, Claimants fail the four element N.L.R.A. test for wrongful termination and their claims for damages resulting from wrongful termination should be disallowed in their entirety.

*THE IBT CLAIM*

In addition to the preceding discussion, the Court hereby finds the following with respect to IBT's claim and the legal basis for IBT'S claim in this proceeding: IBT's claim should be disallowed in its entirety, for the reasons stated hereinabove with respect to Sweeny and Thurber's claims. IBT's claim would have to be disallowed to the extent that it is duplicative of attorneys fees that would be part of Sweeny's and Thurber's claims, if such claims were allowed either by this Court or under the Railway Labor Act.[3] The Court also finds that any and all of IBT's claims for attorneys fees and expenses which are not duplicative of amounts claimed by Sweeny and Thurber, particularly including, but not limited to, IBT's claims for expenses incurred in the course of campaign related business, the nature of which is speculative, which clearly did not provide value or benefit

*Inc.,* 153 L.R.R.M. (BNA) 2181, 1996 WL 578504 (D.Ariz.), in which IBT was not certified at the time certain alleged anti-union activities occurred.

to the ongoing concern of the Debtor or to this estate and with respect to which no contractual privity or duty exists between IBT and either the Debtor or this estate, would have to be disallowed in their entirety. The Court also finds that IBT's claims for "future dues", to the extent they are contingent and/or unliquidated under § 502(c)(1), would have to be valued at zero.