**In re Avery Ray SORRELL and Vergie Sorrell, Debtors.**

**Avery Ray Sorrell and Vergie Sorrell, Plaintiffs,**

**v.**

**Electronic Payment Systems, Inc., Defendant.**

**Bankruptcy No. 96–43559.
Adversary No. 97–4023.**

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

Sept. 10, 2002.

278

Richard A. Pelley, Sherman, TX, for Debtors.

Barry L. Hardin, David, Goodman & Madole, Dallas, TX, for Electronic Payment Systems.

## OPINION

DONALD R. SHARP, Chief Judge.

Now before the Court for consideration is the First Amended Complaint For Declaratory Judgment Avoiding Lien on Homestead Property filed by Avery Ray Sorrell and Vergie Sorrell, the Debtors in the above captioned bankruptcy case and Plaintiffs in this adversary proceeding ("Debtors"). This opinion constitutes the Court's findings of fact and conclusions of law required by Fed.R.Bankr.Proc. 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

The Debtors, Avery and Vergie Sorrell, filed a petition for relief under Chapter 13 of Title 11 of the United States Code. Their plan of reorganization was confirmed and payments have been com-pleted. The Debtors' Schedule "C" of exempt property listed the homestead as exempt under 11 U.S.C. § 522(d)(1) and no objections to such claim of exemptions was filed. Electronic Payment Systems, Inc. was included in their list of secured creditors. Thereafter, Debtors initiated this Adversary Proceeding seeking to avoid the lien of Electronic Payment Systems, Inc. Electronic Payment Systems, Inc., as servicing agent for Beal Bank, S.S.B. ("the Defendant")[1], is the assignee of a certain Builder's and Mechanic's Lien Contract Note and Deed of Trust allegedly recorded in the Real Property Records of Grayson County Texas purporting to place a lien against Debtors' homestead. The property that is the subject of this suit, located at 1019 S. Holly, Sherman, Texas 75090, is claimed by the Debtors' as their homestead ("Homestead"; "Property"). Although the Debtors lived in the home for many years and continuously claimed it as their homestead the evidence showed that the legal title to the real estate was in Elbert Dixon. Mr Dixon is Vergie Sorrell's brother. He had purchased the home for them with the understanding that upon payment to him of the purchase price he would transfer legal title to them. Testimony further revealed that the Sorrell's exercised total dominion and control over the property without any interference from Elbert Dixon.[2]

---

1. The parties stipulated that Beal Bank is the real party in interest in this matter and that Beal Bank is the holder of the disputed note, having purchased it from Associated Mortgage & Financial, Inc.

2. The Sorrell's ability to maintain a homestead exemption in property they did not hold fee title to is explained by the Fifth Circuit in the following language:

 "Under Texas law a homestead claimant need not hold the property in fee simple in order to invoke the exemption. [A]ny possessory interest in a lot or lots, the fee simple title not being required to support it, coupled with the requisite occupancy by the husband and his family, is sufficient to support a homestead claim." *Capitol Aggregates, Inc. v. Walker,* 448 S.W.2d 830, 837 (Tex.Civ.App.Austin 1969, writ ref'd n.r.e.); *First Nat'l Bank of Kaufman v. Dismukes,* 241 S.W. 199, 200 (Tex.Civ.App.-Texarkana 1922, no writ). Furthermore, "[i]t has been held that the rural homestead rights protected by Article 16, Section 50 of the Constitution of Texas may attach to property held ... at the will of the record owners." *Sullivan v. Barnett,* 471 S.W.2d 39, 43 (Tex.

The Debtors' Complaint is that (a) the documentation attempting to place the lien against the Debtors' homestead under the laws of the State of Texas was not executed, acknowledged, delivered and recorded, prior to the inception of the work thus making those documents invalid and (b) that the work done on their homestead was inferior, giving rise to counterclaims for offset because the labor was performed improperly and the materials were defective. Thus, Debtors seek this Court's entry of a judgment and an order avoiding the purported lien on the Debtors' Homestead Property and an offset in the amount not less than $11,800, plus interest since November 3, 1995. The Defendant denied the allegations set forth in the complaint and raised the affirmative defense of estoppel, waiver and ratification. Electronic Payment Systems, Inc., filed a Motion For Relief from the Automatic Stay of Act Against Property which this Court consolidated with this Adversary Proceeding. Likewise, the Debtors' Objection to Claim of Electronic Payment Systems, Inc., was consolidated into the adversary proceeding. The consolidated matters came on for trial together with the Complaint and afterwards all were taken under advisement by the Court.

## JURISDICTION

This Court has jurisdiction over the within proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (C),(G) and (K).

## BURDEN

■ A party who institutes a declaratory-judgment action carries at a minimum the risk of non-persuasion, if not the actual burden of proof. *NRT Metals, Inc. v. Manhattan Metals (Non–Ferrous) Ltd.*, 576 F.Supp. 1046 (S.D.N.Y.1983). *Michigan Mut. Liab. Co. v. Stallings* [citing *Wright & Miller, Fed. Prac. and Proc.*] 523 S.W.2d 539, 544 n. 3 (Mo.App.1975).

## DISCUSSION

■ "Even before the ink had dried on the joint resolution of Congress that admitted Texas as the twenty-eighth state in the Union, Texas citizens enjoyed broad homestead rights." *See Tex. Const. art. VII, § 22 (1845)*. Not much has changed in the last 145 or so years. As it did in the dawning days of the state, the homestead exemption in Texas continues to "protect citizens and their families from the miseries and dangers of destitution." *Matter of Bradley*, 960 F.2d 502, 505 (5th Cir.1992) citing to *Franklin v. Coffee*, 18 Tex. 413, 415–16 (1857). See *Tex. Const. Art. XVI § 50; Tex. Prop.Code § 41.001.50*. Because homesteads are favorites of the law, courts must give a liberal construction to the constitutional and statutory provisions that protect homestead exemptions. *Matter of Bradley*, supra at 507. In the case before this Court, the Debtors/Plaintiffs seek a judgment for the cancellation and avoidance of the claimed security interest against their homestead. The Texas Property Code governs the fixing of a lien against homestead property.[3] Texas Property Code § 53.059 requires:

1971) (citation omitted) (citing cases). *Resolution Trust Corp. v. Olivarez* 29 F.3d 201 p. 205 (5th Cir.1994)

**3.** The current section governing the fixing of a lien against a homestead was added by Acts in 1997 and would not apply to the case at bar. *See Texas Property Code—V.T.C.A.—Section*

*53.254.* Chapter 53, Subchapter C, Sections 53.051 through 059 are pertinent. The October 1995 transaction must be examined under Acts 1983, 68th Leg., pp. 3538–43, ch. 576, § 1, eff. Jan. 1, 1984, as amended by Acts 1989, 71st Leg., 1138, § 1–11, eff. Sept. 1, 1989; and also as amended, by Acts 1993, 73rd Leg. ch. 48, § 7–8, eff. Sept. 1, 1993

(a) To fix a lien on a homestead, the person who is to furnish material or perform labor and the owner must execute a written contract setting forth the terms of the agreement.

(b) The contract must be executed before the material is furnished or the labor is performed.

(c) If the owner is married, the contract must be signed by both spouses.

(d) If the contract is made by an original contractor, the contract inures to the benefit of all persons who labor or furnish material for the original contractor.

(e) The contract must be filed with the county clerk of the county in which the homestead is located. The county clerk shall record the contract in records kept for that purpose.

(f) An affidavit for lien filed under this subchapter that relates to a homestead must contain the following notice conspicuously printed, stamped, or typed in a size equal to at least 10–point boldface or the computer equivalent, at the top of the page:

"NOTICE: THIS IS NOT A LIEN. THIS IS ONLY AN AFFIDAVIT CLAIMING A LIEN."

(g) For the lien on a homestead to be valid, the notice required to be given to the owner under Section 53.056, 53.057, or 53.058, as applicable, must include or have attached the following statement: [4].
....[See footnote 3 herein for text of statement].

*V.T.C.A. Texas Property Code, § 53.059.*

Based upon the evidence, pleadings and record in this case, the events giving rise to this controversy were as follows. On or about October 3, 1995, the Debtor's met, at their home, with a representative of a contractor, G.L.Hunt, Co., in connection with a proposed home improvement project, specifically the installation of windows and siding. The form document memorializing the meeting (*Plaintiffs' Exhibit 1*) is dated "10–3–95" but bears additional notations dated "10–24–95". The form document, entitled "Proposal and Acceptance", appears to have been executed by Philip

[respecting §§ 53.055 and § 53.059 governing "notice of filed affidavit" and "homestead"]. Later amendments found in the current Texas Property Code, do not apply here: i.e. by Acts 1997, 75th Leg., ch. 526, § 5, eff. Sept. 1, 1997. Thus, Texas Property Code, Title 5— "Exempt Property and Liens", Subtitle B— "Liens", Chapter 53 entitled "Mechanic's, Contractor's and Materialman's Lien", was effective at the time of the transaction giving rise to this controversy, i.e. October, 1995 as to its provisions between the 73rd and 75th Legislatures. Section 53.021 "Persons Entitled to a Lien" applies as Amended by Act 1995, 74th Leg. ch.851, 1,6, eff. Sept. 1, 1995. The version of 53.023 "Payment Secured by Lien" amended by the same Act and effective Sept. 1, 1995, also applies.

4. "If a subcontractor or supplier who furnishes materials or performs labor for construction of improvements on your property is not paid, your property may be subject to a lien for the unpaid amount if:"

(1) after receiving notice of the unpaid claim from the claimant, you fail to withhold payment to your contractor that is sufficient to cover the unpaid claim until the dispute is resolved; or

(2) during construction and for 30 days after completion of construction, you fail to retain 10 percent of the contract price or 10 percent of the value of the work performed by your contractor.
"If you have complied with the law regarding the 10 percent retainage and you have withheld payment to the contractor sufficient to cover any written notice of claim and have paid that amount, if any, to the claimant, any lien claim filed on your property by a subcontractor or supplier, other than a person who contracted directly with you, will not be a valid lien on your property. In addition, except for the required 10 percent retainage, you are not liable to a subcontractor or supplier for any amount paid to your contractor before you received written notice of the claim."

Miller, as representative of G.L. Hunt, Co., and Avery and Vergie Sorrell. Mr. Miller was not called upon by either party to testify in this matter. Avery Sorrell testified that he declined the initial offer because it was too expensive and G.L. Hunt's representative returned to the Sorrells' home with an amended offer. Thereafter,[5] a representative of G.L. Hunt Company, presented the Debtors with documents purporting to be a Note and Builder's and Mechanic's Lien Contract and Deed of Trust ("Deed of Trust"). Plaintiffs admit they executed these documents which are made to the benefit of Associated Mortgage & Financial, Inc. *Plaintiffs' Exhibits 2 and 3/ Defendant's Exhibits D–B and D–C.* The Note, dated October 18, 1995 in the upper left hand corner and admitted into evidence, is marked "VOID" in red ink on both pages and a small adhesive note is attached upon which is written: "Give to Mr. & Mrs. Sorrell/Voided Note and Deed Voided Docs". The Deed of Trust, dated October 18, 1995 in the upper left hand corner and admitted into evidence is marked "VOID" in red ink on its first page and the successive pages contain an "X" in red ink. There is no indication on the face of the documents identifying who marked them "void" or when they were marked "void".[6] The testimony revealed that the voided documents were hand delivered to the Debtors *sometime after the documents' execution.* The testimony and evidence support that the fourth page of the Deed of Trust had been removed by an unknown party at the time of its return to the Sorrells.

Subsequently, a second set of similar documents was prepared dated November 3, 1995. According to testimony, the second set was prepared later than November 3, 1995 then back dated. These documents were admitted into evidence as *Plaintiffs' Exhibit 4 and 17* and also as *Defendant's Exhibit D–F and D–H. Plaintiffs' Exhibits 4,* entitled "Note" and *Plaintiff's Exhibit 17,* entitled "Builder's And Mechanic's Lien Contract and Deed of Trust" are prepared versions of the Note and Deed of Trust typed with names and dates, but have neither been executed nor initialed by either of the Debtors. There is a blank line awaiting signatures. In contrast, *Defendant's Exhibit D–F and D–H,* which are the versions of the same Note and Deed of Trust admitted by Defendant, bear the initials and signatures of Avery and of Vergie Sorrell. *Defendant's Exhibit D–F* differs from the Plaintiffs' version of same also in that it contains an allonge between Beal Bank, S.S.B., as payee and Associated Mortgage & Financial, Inc., as beneficiary. The Allonge To The Note is dated November 3, 1995. The Allonge to Note is not executed by either of the Debtors. It contains the signature of Don A. Pfautsch as President of Associated Mortgage & Financial, Inc. Neither party called upon Mr. Pfautsch to testify to the circumstances surrounding his alleged execution of the allonge or whether he witnessed execution of the Note by the Sorrells. *Defendant's Exhibit D–H* differs from the Plaintiffs' version of same in that it includes a fourth page, entitled "Request for Notice of Default and Foreclosure . . ." reflecting signatures of Avery and Vergie

---

5. Testimony regarding the dates was unclear as to whether it was October 18 or Oct. 24, 1995.

6. Assuming, *arguendo*, the documents were *not voided by a party with authority to do so,* any lien that they created would be a valid but voidable unperfected lien because the lien

was not recorded. Defendant has not attempted to resurrect the October 18, 1995 documents nor has Defendant controverted or denied that the documents were void. Rather, Defendant relies upon the purported validity of the November 3, 1995 documents.

Sorrell, Gary L. Hunt and a notary for the State of Texas. Neither G.L. Hunt nor the Notary appeared at the trial to testify to the execution of the fourth page of the Deed of Trust or the circumstances surrounding same.

*Defendant's Exhibit "G"* is entitled Tri-Party Loan Agreement. It is the copy of an agreement purported to have been executed on November 3, 1995 among Associated Mortgage & Financial, Inc., by and through Don Pfautsch as President, Avery Sorrell, Vergie Sorrell and Gary L. Hunt, as owner of the contractor G.L. Hunt Co. Neither Mr. Pfautsch nor Mr. Hunt testified regarding the execution of the Tri-Party Loan Agreement or the circumstances surrounding same.

The Sorrells testified that they believe the initials and signatures of the November 3, 1995 documents to have been forged manually or by means of an electronic copier. Their opinion is that page four of the Deed of Trust executed on October 18, 1995 was removed and used to create the false signatures on the November 3, 1995 documents. There is no evidence that such replacement occurred beyond their speculation and the missing page. Defendant, of course, denies that the November 3, 1995 documents were forged. At trial, Linda James, a board certified document examiner was called as an expert witness to discuss whether the signatures were authentic and the issue of whether the signature of Elbert Dixon, which appears on a Warranty Deed, also apparently executed on November 3, 1995, granting Avery Sorrell and Vergie Sorrell the homestead property known as 1019 S. Holly, Sherman, Texas, was an authentic signature. *Plaintiff's Exhibit 23. Defen-*

*dant's D-O.* Ms. James testified at length and in great detail regarding her methods and her conclusions in assessing the veracity of signatures on questioned documents, matching known, verified signatures against contested signatures. James testified that the signatures on the November 3, 1995 documents were the Sorrells'. However, the Court was unable to give her testimony sufficient credence to meet the threshold of persuasion when such testimony was juxtaposed to Avery Sorrell's testimony, Elbert Dixon's testimony and certain elements of Vergie Sorrell's testimony. James expert testimony dwelled in great detail on the methodology used in authenticating signatures. She explained in detail the points of the signature that she considered the tell-tale markings that would always appear in an authentic signature but that could not be duplicated in an attempted forgery. She testified that all signatures contained these tell-tale markings and that it was simply a matter of determining the basic characteristics of a signature and checking for those basic characteristics in the signature to be authenticated. The problem with her expert testimony was that when it came to applying those tell-tale markings to the actual signatures in question she failed to explain where they were and how the markings on the questioned signature matched the known samples of the Sorrell's signatures. She did not demonstrate the similarities to the Court but simply offered the conclusion that the signatures on the document dated November 3, 1995 were authentic.[7] The Court finds that the evidence supports Debtors' version of the events: the documents dated November 3, 1995 are falsified.

---

7. Of course one plausible explanation could be that the Sorrell's speculation that the signature page from the "voided" documents was retained and attached to the later document dated November 3, 1995. Either way, Defendant's have failed to prove that the signatures are genuine.

## The Warranty Deed.

 Elbert Dixon convincingly testified that he did not execute the Warranty Deed placed into evidence. *Plaintiff's Exhibit 23.* He convincingly testified that he was not even in Texas on November 3, 1995 when the Warranty Deed was alleged to have been executed before the Texas notary public who did not appear at trial to controvert his testimony. Defendant adduced no other evidence, for example notary records, to controvert Dixon's testimony. The Defendant argued that the Warranty Deed was executed by Vergie Sorrell. Linda James' expert testimony failed to persuade the Court that Vergie Sorrell executed the Warranty Deed on behalf of Elbert Dixon either as his agent or as a forgery. Thus, at a minimum, all parties agree that Elbert Dixon did not sign the Warranty Deed. A forged deed lacks effectiveness, and neither consent, waiver, estoppel, implications, delivery, nor recording can give any legal effect to it. *Commonwealth Land Title Ins. Co. v. Nelson*, 889 S.W.2d 312, 318 (Tex.App.-Houston [14th Dist.] 1994, writ denied). A forged deed is void ab initio and inoperative. *Dyson Descendant Corp. v. Sonat*, 861 S.W.2d 942, 947 (Tex.App.-Houston [1st Dist.] 1993, no writ); *Gaynier v. Ginsberg*, 715 S.W.2d 749, 757 (Tex.App.-Dallas 1986, writ ref'd n.r.e.); *Turner v. Germany*, 94 S.W.2d 1177, 1179 (Tex.Civ.App.-Texarkana 1936), *rev'd on other grounds*, 132 Tex. 491, 123 S.W.2d 874 (1939). Title to land cannot pass under a forged deed. *Bellaire Kirkpatrick Joint Venture v. Loots*, 826 S.W.2d 205, 210 (Tex.App.-Fort Worth 1992, writ denied); *1st Coppell Bank v. Smith*, 742 S.W.2d 454, 461 (Tex. App.-Dallas 1987, no writ). Based upon the testimony of all witnesses and the documentary evidence adduced, the Court finds that the Warranty Deed, allegedly executed by Elbert Dixon on November 3, 1995 [8], purporting to convey title of the property from Dixon to Debtors, was not executed by Elbert Dixon and as a result, the Warranty Deed was void ab initio and the Debtors did not hold legal title in the subject property, notwithstanding their homestead rights in the subject property.[9]

8. The Warranty Deed indicates on its face that it was recorded in Grayson County on December 1, 1995. Whether the document was in fact recorded was called into question at the hearing and not truly resolved through the evidence. Mr. Sorrells testified that he was mailed the Warranty Deed (*Plaintiff's Exhibit 23*) by the County; it appears to be an original. Whether the Warranty Deed was recorded does not effect the outcome because a forged deed is void ab initio as discussed hereinabove. The Notary Public who acknowledged the signature of Mr. Dixon was not called upon by either party to testify at the hearing to the circumstances surrounding the execution or recording of the Warranty Deed.

9. Even were the Court to find that the signature on the Warranty Deed Mr. Dixon's, the Warranty Deed is flawed and invalid. The Warranty Deed lacks a legal property description. Defendant argued that the language "above described premises" in the habendum clause was sufficient to identify the property to be conveyed with reasonable certainty. *Kmiec v. Reagan*, 556 S.W.2d 567–68, 569 (Tex.1977). *Broaddus v. Grout*, 152 Tex. 398, 258 S.W.2d 308 (Tex. May 13, 1953). The Court examined the Warranty Deed and finds that the property description is ambiguous and, therefore, legally insufficient to identify the real property to be conveyed. Defendant suggests that the Court infer that "above described premises" be read to refer to "Grantee's Address" in this instance. Following the words "property description" there is a blank area. To read the Warranty Deed as Defendants argue it should be construed requires the Court to jump to a conclusion for which there are no facts (i.e. "above described premises" refers to "Grantee's address" absent any other legal description of property) and one that sets a poor precedent. Neither may essential elements be supplied by parol. *Wilson v. Fisher*, 144 Tex. 53, 188 S.W.2d 150, 152 (1945) *reh'g. denied.* The Court believes that to accept Defendant's argument

The General Power of Attorney.

■ Although the Sorrells could not convey an interest in the Property to Defendant via the Note, Builder's and Mechanic's Lien Contract and Deed of Trust as owners, because they did not own the Property, there was still an argument that Vergie Sorrell could convey a lien interest in the Property. Under Tex. Property Code § 53.021(a)(1) and (2) a person has a lien if the person labors ... or furnishes labor or materials for construction or repair in this state of: (A) a house, building or improvement ....under or by virtue of a contract with the owner or owner's *agent* ... [emphasis added]. *Tex. Property Code § 53.021(a)(2)*. Defendant's Exhibit "D-Y" is entitled "General Power of Attorney" and executed by Elbert Dixon on October 30, 1991 (*Defendant's Exhibit "D-Y"*). The General Power of Attorney was notarized by a Public Notary in the State of Kentucky and appears to have been recorded there. Coupled with the negotiations entered into by and between the parties in connection with the execution of the subsequently voided October 18, 1995 documents, the General Power of Attorney demonstrates that Vergie Sorrell had authority to act as agent for Elbert Dixon and that entering into a contract for the repair and improvement of the 1019 S. Holly Street property fell within the scope of her agency.[10] There is no evidence before this Court that the General Power of Attorney has or had been revoked at the time of the negotiations between the Debtors and Defendant's predecessor-in-interest. Accordingly, Vergie Sorrell was authorized legally to enter into a contract for repair and improvements of Dixon's real property, which contract would legally bind Elbert Dixon, notwithstanding Vergie Sorrell's lack of legal title in and to the Homestead Property. *Byers v. Chatfield*, 164 S.W. 415 (Tex.App.-Galveston, Feb 13,

---

encourages careless drafting and unnecessary litigation.

**10.** The text of the General Power of attorney is as follows:

*"KNOW ALL MEN BY THESE PRESENTS:*

That I, ELBERT DIXON, of 4813 Grenada, Louisville, Jefferson County, Kentucky, on this—*30th*—day of October, 1991, do make, constitute and appoint VERGIE SORRELL, of 1019 S. Holly, Sherman, Texas 75090, my true and lawful attorney in fact, for me and in my name, place and stead, with full power and right and authority to take charge of managing and controlling all my business relating to my estate, that is, the right to mortgage, lease, sell and dispose of any personal (whether tangible or intangible) and/or real property that I may own, or have an interest in, wheresoever situated, and to collect and dispose of the proceeds thereof, to collect any and all debts due to me, sign my name to checks on any bank account of mine and execute and deliver any and all papers for me in my name that I myself could execute relating to my personal business and personal estate. She may and can under this power, sell, rent out and lease any real estate owned by me for such terms of years and upon such conditions as she may think best and to my interest and I hereby ratify and confirm whatever my said agent and attorney may do for me in my name and in the premises and giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite, necessary and proper to be done in and about the premises as fully to all intents and purposes as I might or could do if personally present (with full power of substitution or revocation), hereby ratifying and confirming all that said attorney or substitute shall lawfully do, or cause to be done by virtue thereof.

This Power of Attorney and authority shall not terminate upon my mental or physical disability, incompetency or incapacity, but shall extend for such time until my death or written revocation of same, with such written revocation to be properly recorded in the appropriate recorder's office." It is then signed and notarized. The face of the document reflects it was recorded as number 015254 at volume 2179, page 367–69 but the place of recording is not reflected in the copy admitted into evidence. The Debtors did not object to the admittance of the document.

1914) *reh'g. denied.* However, just the fact that Vergie Sorrell could have bound Elbert Dixon as his agent does not make it so. There is no evidence that Vergie Sorrell signed the document in her capacity as Elbert Dixon's agent or in any other capacity. The Court finds no proof that Vergie Sorrell executed the document and it defies common sense to think that she would have forged the document when she could have simply signed as the agent of Elbert Dixon. In addition, the Court finds that even if the document had been properly executed the purported lien would still not be valid.

### The Contract Documents.

Under § 53.059(a) of the Texas Property Code, "To fix a lien on a homestead, the person who is to furnish material or perform labor and the owner must execute a written contract setting forth the terms of the agreement." Under § 53.059(b), "The contract must be executed before the material is furnished or the labor is performed."[11] Further, under § 53.059(d), the contract must be filed with the county clerk in the county where the homestead is located and recorded. Finally, under § 53.059(h) there must be a lien affidavit containing specific and conspicuous notice provisions. *V.T.C.A. Texas Property Code § 53.059.* (See also § 53.052 regarding the requirement that the person claiming the lien must file an affidavit with the county clerk.)

The Court has carefully considered the extensive evidence, the testimony at the trial, the pleadings and the argument of counsel. The Defendant's case fails despite the fact that Vergie Sorrell is Elbert Dixon's agent because there is no evidence before the Court that the contractual documents were properly executed, filed or recorded as contemplated by the aforementioned provisions of the Texas Property Code. There is no evidence that the Sorrells received proper notice, as contemplated by the aforementioned provisions of the Texas Property Code. The Debtors offered the Court, via their testimony, a credible chronology and description of the events of October 3, 1995 through Thanksgiving of 1995. The evidence persuaded the Court that the initial documents executed by the Sorrells were voided by an undisclosed or unknown party but while in the possession of Defendant or Defendant's agent. Certainly, there is no evidence that those documents were filed or recorded. The evidence adduced via testimony and the physical evidence admitted at trial fully support a finding that the second set of loan documents, including the Note and the allonge to same *(Defendant's D–F)*, the "Builder's And Mechanic's Lien Contract and Deed of Trust" *(Defendant's D–H)*, Itemization of Amounts Financed *(Defendant's D–K)*, Settlement Statement *(Defendant's D–L )*, Second Mortgage or Home Improvement

---

**11.** The Constitution provides, with reference to fixing a mechanic's lien upon a homestead, that it may be subjected to such lien for work and materials used in constructing improvements thereon, provided the work and materials are contracted for in writing with the consent of the wife given in the same manner as is required in making a sale or conveyance of the homestead. Article 16, § 50, Const. R.S. art. 5460 further provides that, where repairs are to be made upon a homestead, it is necessary that the contract for labor and materials shall be executed before the materials are furnished or the labor is performed, and that such contract shall be recorded in the office of the county clerk. That such contract must be executed before any work is done has been frequently decided. *Lubbock Nat. Bank v. Nickels,* 63 S.W.2d 764, 767 (Tex.Civ.App.-Amarillo Oct 11, 1933) citing to *Burton v. Schwartz* 36 S.W.2d 1066 (Tex.Civ. App.-Ft.Worth 1931); *Walker v. House,* 24 S.W. 82 (Tex.Civ.App.1893).

Application (*Defendant's D–M*), Insurance Loan Disclosures (*Defendant's D–N*) and the Tri–Party Loan Agreement (*Defendant's D–G*) (the "November 3, 1995 documents") were neither executed by Avery Sorrell nor Vergie Sorrell. Even were the Court not to find, as it does, that the November 3, 1995 documents were falsified, the Court would have to find that labor was commenced and improvements performed on the Homestead Property *prior* to the recording of any documents or the filing of same with the county clerk in the county in which the homestead is located because there is no evidence before the Court of the November 3, 1995 documents ever being filed or recorded. *See § 53.059(b) and (c)*. Furthermore, even were the November 3, 1995 documents legitimately executed and thereafter recorded, no evidence was adduced that proper notice was given to Avery Sorrell and Vergie Sorrell as required to perfect Defendant's alleged lien against the Homestead Property. E.g. *Brown v. Dorsett Bros. Concrete Supply, Inc.*, 705 S.W.2d 765 (Tex.App.-Houston, 1986); *Robert Burns Concrete Contractors, Inc. v. Norman*, 561 S.W.2d 614 (Tex.App.-Tyler, 1978), *ref. n.r.e.; Texas Const. Associates, Inc. v. Balli*, 558 S.W.2d 513 (Tex.App.-Corpus Christi 1977), *no writ. Cf. St. Paul Fire & Marine, Ins. Co. v. Vulcraft*, 748 S.W.2d 290 (Tex.App.-Tyler 1988). Specifically, there is no evidence before the Court that Defendant complied with § 53.059(h) requiring specific notice in the lien affidavit (i.e. at least 10–point boldface ... at the top of the page). Any one of the above violations would be sufficient to persuade the Court to avoid the lien of Defendant. The combination of deficiencies compel the Court's declaration that the lien is invalid and should be avoided by this Court.

Although much of the evidence in this case is in hopeless conflict it is obvious that at some point the Debtor's executed some documents that they felt authorized the work on their property. Their belief is that the only documents properly executed were the original October documents which have been marked void and returned to them minus the signature page. The Debtors have demonstrated fatal deficiencies in the documents on which the Claimant relies. The lien holder has failed to counter that evidence with a believable explanation. The Court therefore finds that the Defendant's have failed to carry their burden of proof demonstrating clearly that they hold a proper secured claim against the Debtor's homestead property. The Claimant's have simply failed to demonstrate by a clear chain of evidence that they hold a properly executed and recorded lien for repair and improvements to Debtor's homestead.

### Conclusion regarding the validity of the lien.

Given the foregoing radical infirmities in the documentation offered to support Defendant's claim of a valid lien against Debtors' Homestead Property this Court finds that Debtors have carried their burden of proof on this issue and the Court must declare the lien of Defendant against 1019 S. Holly, Sherman, Texas void and of no effect and must require the Defendant to execute any and all documents necessary to clear the title against the Homestead Property of Defendant's claims.

### Motion For Relief From Automatic Stay

In accordance with the foregoing, the Court must deny the relief sought in the Motion for Relief From Automatic Stay of Act Against Property filed by Electronic Payment Systems, Inc., as servicing agent for Beal Bank, S.S.B. on the basis that Defendant no longer has a valid lien, therefore, any claim of Defendant is unsecured and the issue of adequate protection

of the property securing Defendant's/Claimant's claim is moot.

### Objection to Proof of Claim and Counterclaim for Offset

Federal Rule of Bankruptcy Procedure 3001(f) gives the following evidentiary effect to the filing of a proof of claim—"A proof of claim executed and filed in accordance with the rules shall constitute prima facie evidence of the validity and amount of the claim." An objecting party must produce evidence rebutting the claimant, or the claimant will prevail. *In re WHET, Inc.*, 33 B.R. 424, 437 (Bkrtcy.D.Mass.1983). The traditional standard of proof imposed upon a creditor seeking to have its claim allowed is by a preponderance of the evidence. *In re Koch*, 83 B.R. 898, 17 B.C.D. 449 (Bkrtcy. E.D.Pa.1988). Although the burden of production shifts to the objecting party, the burden of persuasion by a preponderance of the evidence remains with the claimant: "If, however, evidence rebutting the claim is brought forth, then the claimant must produce additional evidence to 'prove the validity of the claim by a preponderance of the evidence' ". *Calif. State Board of Equalization v. The Official Unsecured Creditors' Committee (In the Matter of Fidelity Holding Co., Ltd.,)* 837 F.2d 696, 697 (5th Cir.1988). See also: *In re WHET, Inc.*, 33 B.R. 424, 437 (Bkrtcy. D.Mass.1983). "Preponderance of the evidence" means: "Evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not." *Braud v. Kinchen*, 310 So.2d 657, 659 (La.App.1st Cir. 1975). It is evidence which is more credible and convincing than the other evidence brought. The standard is more than a "scintilla" of evidence and less than "clear and convincing". *In re Express One International, Inc.*, 229 B.R. 129, 133

(Bankr.E.D.Tex., 1999). A preponderance of the evidence means "by the greater persuasive force thereof, and not the greater volume thereof, or the greater number of witnesses testifying thereto". *Liechti v. Roche*, 198 F.2d 174, 177 (5th Cir.1952). *In re Express One International, Inc.*, 243 B.R. 290, 292–293 (Bankr. E.D.Tex., 1999).

It is incumbent upon Defendant, whose claim has been objected to by the Debtor, to prove the extent and validity of its claim by a preponderance of the evidence. Defendant filed its Proof of Claim in this case as a secured claim in the amount of $16,004.18. Debtors objected to the claim as a secured claim but indicated that the claim would not be objectionable as an unsecured claim. The matter was set for trial. At the hearing on the Objection to Claim, the Court ruled that the matter should be heard together with the adversary matter which included a claim for offset for defective work, labor, and materials provided to Debtors in a sum of not less than $11,800 plus interest since November 3, 1995. In addition to arguing that Defendant's lien against the Homestead Property should be avoided, a significant portion of the trial was dedicated to discussion of the events following the performance of work on the Sorrells' Homestead Property by Defendant's agent and the questionable quality of such workmanship. Testimony of Debtors' witnesses respecting the contested claim was supported by photographs.

Defendant's evidence respecting the quality of the work performed consisted of a poor quality audio tape of a conversation between a representative of Beal Bank and Vergie Sorrell in which Ms. Sorrell tells the Beal Bank representative that the work has been completed and that the work is satisfactory. Ms. Sorrell denied

that the tape recording was of her conversation. The Court was not convinced that it was not Ms. Sorrell's voice. The Beal Bank representative was not called as a witness. Regardless, the Court is of the opinion that Ms. Sorrell's statement that the work was satisfactory within a few days of its completion provides no aid or comfort to Defendant. The evidence that the windows leaked and that some of the siding detached and that as a result Debtors sustained damages for repair was credible and convincing. The quality of the work mirrored the quality of the lending documents—both were shoddy, shabby and fail to support the claim of defendant. In addition to disallowing the claim of Electronic Payment Systems, Inc. as a secured claim the Court finds that the Sorrell's claim of shoddy workmanship entitles them to a reduction of the claim in the amount of $11,800.00 as requested. Mr. Sorrell's evidence as to the quality, or lack thereof, of the work was clear and concise. Defendant actually offered no evidence in contravention of Sorrell's direct testimony. Accordingly, the claim of Electronic Payment Systems, Inc. is reduced by $11,800.00 and is allowed as an unsecured claim in the amount of $4,204.18.

*Attorneys fees and damages.*

The Complaint seeks monetary damages, attorneys fees and costs. The Supreme Court explained the American rule regarding attorney fees in *Alyeska Pipeline Service Company v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The general rule is that each party to a lawsuit must bear his or her own costs and the prevailing litigant cannot collect attorney fees from the losing litigant as a general rule. There are five specific exceptions to the rule which allow attorney fees when (1) a statute authorizes them, (2) a provision in a contract allows them, (3) when a litigant has deliberately disobeyed a court order, (4) when a litigant

has acted in bad faith, and (5) when a litigant recovers a common fund for the benefit of a group. The Debtors argued this case along the lines of deceptive trade practices and fraud. This Court does not believe that punitive damages are appropriate against this Defendant. The Court believes that Electronic Payment Systems, Inc., as agent for Beal Bank and as successor in interest, to Associated Mortgage & Financial, Inc., is almost as much a victim as the Sorrells in this matter, insofar as Defendant is left holding worthless paper it purchased in apparent good faith and attempted to defend.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court having heard the testimony and examined the evidence presented; observed the candor and demeanor of the witnesses; considered the arguments of counsel, and being otherwise fully advised in these premises, does hereby make the following Findings Of Fact And Conclusions Of Law:

This Court has jurisdiction over the parties hereto and the subject matter hereof.

At trial, Debtors testified that they have lived continuously at 1019 S. Holly, Sherman, Texas for a number of years and before October 1995 and that the house there was their home and permanent residence. There is no evidence that the Debtors either owned or occupied any other residential real property.

Based on the foregoing, the Court finds that the property at 1019 S. Holly, Sherman, Texas and occupied by the Debtors is homestead property within the meaning of the Statutes and Constitution of the State of Texas; that such homestead property is exempt property pursuant to Section 522

of the Bankruptcy Code; that the Builder's and Mechanic's Lien Contract Note and Deed of Trust recorded in Defendant's favor which purports to impress a lien upon the said homestead real property was falsified; and that such a lien is therefore invalid.

The Court further finds that the Warranty Deed alleged to have been executed by Elbert Dixon purportedly conveying the real property at 1019 S. Holly, Sherman, Texas to the Debtors is a forged document and void ab initio.

The Court finds that the Note and Deed of Trust documents dated October 18, 1995 were executed by Avery and Vergie Sorrell, but were subsequently voided by Defendant or Defendant's agent, and shall be and hereby remain, invalid and void for all purposes.

The Court finds that the Note and Deed of Trust documents dated November 3, 1995 were not executed by Avery and Vergie Sorrell, but were created by some false means, and shall be and hereby remain, invalid and void for all purposes.

The Court finds no evidence to support that the Deed of Trust document dated November 3, 1995 and created by some false means, was properly recorded in compliance with the requirements of the Texas Property Code and shall be and hereby remain, invalid and void for all purposes.

The Court finds that proper notice of the filing of a lien or affidavit was not provided to Avery Sorrell, Vergie Sorrell or to Elbert Dixon and concludes that as a result any lien of Defendant against the Homestead Property is invalid, void and of no effect.

The Court concludes, as a result of the foregoing, that Defendant's lien against Debtors' Homestead Property, is void and of no effect.

Based upon the foregoing, the Motion For Relief from the Automatic Stay of Act Against Property should be denied.

Based upon the foregoing, the Court concludes that the Proof of Claim filed by Defendant should be disallowed as a secured claim, but allowed in the reduced amount of $4,204.18 as an unsecured claim.

Based upon the foregoing, the Court finds and concludes there is no basis for an award to Debtors of attorneys fees, costs, or monetary damages in addition to the disallowance in full of Defendant's claim against the estate. An order will be entered accordingly.